**FOREST OIL CORPORATION and Daniel B. Worden, Petitioners,**

v.

**James Argyle McALLEN, El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, and McAllen Trust Partnership, Respondents.**

No. 06–0178.

Supreme Court of Texas.

Argued Oct. 16, 2007.

Decided Aug. 29, 2008.

Rehearing Denied Nov. 14, 2008.

Geoffrey L. Harrison, Johnny W. Carter, Richard Wolf Hess, Susman Godfrey LLP, Houston, TX, Mitchell C. Chaney, Aaron Pena Jr., Rodriguez Colvin Chaney & Saenz, L.L.P., Brownsville, TX, Neil E. Norquest, Rodriguez, Colvin, Chaney & Saenz, L.L.P., Edinburg, TX, for Petitioners.

Jon Christian Amberson, Larissa Janee Hood, Jon Christian Amberson, P.C., John F. Carroll, San Antonio, TX, Rolando Cantu, Rolando Cantu & Associates, P.L.L.C., McAllen, TX, Craig T. Enoch, David Scott Morris, Winstead Sechrest & Minick P.C., Austin, TX, for Respondents.

Joseph R. Knight, Baker & Botts, L.L.P., Austin, TX, for Amicus Curiae.

Justice WILLETT delivered the opinion of the Court, in which Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice BRISTER, Justice GREEN, and Justice JOHNSON joined.

This commercial contract case asks whether an unambiguous waiver-of-reliance provision precludes a fraudulent-inducement claim as a matter of law. Here, sophisticated parties represented by counsel in an arm's-length transaction negotiated a settlement agreement that included clear and broad waiver-of-reliance and release-of-claims language. Because that agreement conclusively negates reliance on representations made by either side, any

fraudulent-inducement claim, lodged here to avoid an arbitration provision, is contractually barred. We enforce the parties' contract as written. Thus, we reverse the court of appeals' judgment and remand to the trial court to compel arbitration in accordance with our opinion.

## 1. Factual and Procedural Background

In 1999, Forest Oil Corporation settled a long-running lawsuit over oil and gas royalties and leasehold development with James McAllen and others with interests in the McAllen Ranch.[1] The settlement agreement resulted from a week-long mediation and released Forest Oil from "any and all" claims "of any type or character known or unknown" that are "in any manner relating to" the McAllen Ranch Leases and the covered lands, whether the claims sound in contract, tort, trespass or any other theory.[2] While this sweeping release resolved the royalty and nondevelopment disputes, the parties reserved the right to arbitrate under the Texas General Arbitration Act (TAA) claims "for environmental liability, surface damages, personal

1. This appeal does not involve every party to the 1999 settlement agreement at issue. The defendants in the litigation that resulted in that settlement were Forest Oil Corporation, Shell Oil Company, Conoco Incorporated, and Fina Oil & Chemical Company, along with divisions of these entities. The plaintiffs included various business entities, individuals, and individual trusts. These parties settled their dispute in June 1999.

Five years later, James McAllen and several others filed suit against Forest Oil, its employee (Daniel B. Worden), and ConocoPhillips Corporation. ConocoPhillips was nonsuited, so only Forest Oil and Worden are petitioners here. They are referred to collectively as "Forest Oil." Four plaintiffs to the pending litigation—James McAllen, El Rucio Land & Cattle Company, San Juanito Land Partnership, and McAllen Trust Partnership— are respondents to this appeal and referred to collectively as "McAllen," unless otherwise noted. These four plaintiffs admit they are bound by the 1999 settlement agreement either as signatories or successors in interest thereto. Several other plaintiffs are not parties to this appeal, and Forest Oil concedes the trial court lacked authority to require these other plaintiffs to arbitrate the current dispute.

2. The release language reads:
   [The plaintiffs] generally and unconditionally RELEASE, DISCHARGE, and ACQUIT [the defendants] of and from any and all claims and causes of action of any type or character known or unknown, which they presently have or could assert, including but not limited to all claims and causes of action (i) in any manner relating to, arising out of or connected with the McAllen Ranch Leases, or any of them, (ii) in any manner relating to, arising out of or connected with the Lands covered by the McAllen Ranch Leases, or any of them, (iii) in any manner relating to, arising out of or connected with any implied covenants pertaining to the McAllen Ranch Leases, or any of them, including (without limitation) implied covenants or obligations with respect to drainage, development, unitization, marketing or the administration of the McAllen Ranch Leases ... (vi) all claims and causes of action that the [plaintiffs] asserted or could have asserted in the Lawsuit including (without limitation) matters arising or sounding in contract, in tort (including intentional torts, fraud, conspiracy, and negligence), in trespass, for forfeiture, or under any other theory or doctrine, including any claim for attorneys fees, costs, and sanctions; and the [plaintiffs] hereby declare that all such claims and causes of action have been fully compromised, satisfied, paid and discharged; except that the [plaintiffs] reserve and except from this release only (a) their rights to receive the consideration (monetary and otherwise) provided in this Agreement, (b) their rights to accrued but unpaid royalties ..., (c) any rights and claims arising under the McAllen Ranch Leases ... after the Effective Date of this Agreement, (d) any rights or claims they may have, if any, for environmental liability, surface damages, personal injury, or wrongful death occurring at any time and relating to the McAllen Ranch Leases, (e) the funds held [pursuant to this Agreement], and (f) any intentional act done in contravention of this Agreement or the

injury, or wrongful death occurring at any time and relating to the McAllen Ranch Leases." The parties also incorporated into the settlement agreement a separate surface agreement that detailed ongoing care and remediation of the surface estate.[3]

Importantly, the settlement agreement specifically disclaimed reliance "upon any statement or any representation of any agent of the parties" in executing the releases contained in the agreement.[4] The parties also acknowledged they were "fully advised" by legal counsel as to both the contents and consequences of the release.

In 2004, McAllen sued Forest Oil to recover for environmental damage caused when Forest Oil allegedly "used its access under the leases to the surface estate to bury highly toxic mercury-contaminated" material on the McAllen Ranch. McAllen also alleged environmental and personal injuries caused when Forest Oil moved oilfield drilling pipe contaminated with radioactive material from the McAllen Ranch to a nearby property, the Santillana Ranch, which housed a sanctuary for endangered rhinoceroses.[5]

Forest Oil sought to compel arbitration under the settlement agreement, but

---

McAllen Ranch Leases between the date of execution hereof and the Effective Date. Any disputes over any of the above items excepted and reserved from this release shall be resolved in arbitration pursuant to [this Agreement].

3. The surface agreement required that oil companies remove nonnatural materials from the sites of abandoned wells and "not store or dispose of any hazardous materials on the surface of the Leases." In addition, the surface agreement states plainly that surface issues shall be addressed by arbitration: "Surface issues which arise in connection with the Leases shall be subject to that certain Arbitration Agreement set forth and described in the Settlement Agreement. The specific issues addressed below shall become part of the Settlement Agreement and shall be enforceable in accordance with the terms of such Agreement."

4. The waiver-of-reliance provision reads:
   [1] Each party acknowledges and confirms that each has had the opportunity to consult with counsel and has been fully advised by counsel prior to the execution of this Agreement.
   [2] Each of the Plaintiffs and Intervenors expressly warrants and represents and does hereby state and represent that no promise or agreement which is not herein expressed has been made to him, her, or it in executing the releases contained in this Agreement, and that none of them is relying upon any statement or any representation of any agent of the parties being released hereby. Each of the Plaintiffs and Intervenors is

relying on his, her, or its own judgment and each has been represented by his, her, or its own legal counsel in this matter. The legal counsel for Plaintiffs have read and explained to each of the Plaintiffs the entire contents of the releases contained in this Agreement as well as the legal consequences of the releases....
   [3] Defendants expressly represent and warrant and do hereby state and represent that no promise or agreement which is not herein expressed has been made to them in executing the releases contained in this Agreement, and that they are not relying upon any statement or representation of any of the parties being released hereby. Defendants, and each of them are relying upon its own judgment and each has been represented by its own legal counsel in this matter. The legal counsel for Defendants have read and explained to them the entire contents of the releases contained in this Agreement as well as the legal consequences of the releases.

5. The plaintiffs filed a joint petition asserting negligence, gross negligence, trespass, nuisance, strict liability, negligence per se, misrepresentation, fraud, fraudulent concealment, and intentional battery. The facts giving rise to these causes of action took place on two properties: the Santillana Ranch and the McAllen Ranch. We will refer to the claims arising on the McAllen Ranch as the "McAllen Ranch claims" and claims arising on the Santillana Ranch as the "Santillana Ranch claims."
   Forest Oil produces oil on the McAllen Ranch pursuant to the McAllen Ranch Leases;

McAllen argued the arbitration provision was induced by fraud and thus unenforceable. McAllen recounts assurances during the 1999 settlement negotiations that no environmental pollutants or contaminants existed on the property. McAllen claims an unidentified lawyer for one of the four defendants "assured [McAllen] that there was no problem, no issue at all that [he] would be concerned about," and McAllen says he signed the agreement based on that specific representation. McAllen claims that when this assurance of "no environmental issues" was given, Forest Oil knew all about the radioactive-contaminated pipe and the mercury-contaminated material.

After an evidentiary hearing on Forest Oil's motion to compel arbitration, the trial court denied the motion, and the court of appeals affirmed, applying a no-evidence standard of review because the case was "an interlocutory appeal from an order denying a motion to compel arbitration that involves the defense of fraudulent inducement." [6] After examining the testimony of McAllen and a former Forest Oil employee, the court of appeals concluded there was some evidence to support the trial court's determination that the arbitration provision was induced by fraud.[7]

■ This interlocutory appeal followed.[8] Although the court of appeals treated Forest Oil's argument as an evidentiary challenge, this case fundamentally poses a legal question, not a factual one: does McAllen's disclaimer of reliance on Forest Oil's representations negate the fraudulent-inducement claim as a matter of law? We review this legal question de novo.[9]

## 2. Enforcement of the Parties' Arbitration Agreement Under the Texas General Arbitration Act

■ We first address application of the TAA, which the parties' settlement

---

this relationship was the basis of the original 1999 litigation that produced the now-disputed settlement agreement. The Santillana Ranch is owned by John R. Willis Management Partnership; this entity is one of the plaintiffs to the underlying suit that are not parties to this appeal. *See supra* note 1.

The Third Amended Petition claims Forest Oil buried radioactive material on the McAllen Ranch, resulting in groundwater and soil contamination. The petition does not assert personal injuries related to the McAllen Ranch. McAllen tried to establish a rhinoceros sanctuary on the Santillana Ranch and asked Forest Oil, which has no lease on that ranch, to donate oilfield pipe to be used as pen enclosures. Forest Oil took pipe from the McAllen Ranch to the Santillana Ranch, where McAllen and his employees worked on the rhinoceros pens. McAllen claims this pipe was radioactive and has produced both environmental and personal injuries.

Forest Oil claims that because the pipe giving rise to the Santillana Ranch claims came from the McAllen Ranch, the Santillana Ranch claims also fall within the settlement agreement's arbitration clause, which requires arbitration of claims "arising out of or relating to the McAllen Ranch Leases." We do not reach this issue.

6. 268 S.W.3d 63.

7. *Id.* at 64.

8. We have jurisdiction to hear an appeal from an interlocutory order denying arbitration if the court of appeals' decision conflicts with our precedent. *See* TEX. GOV'T CODE §§ 22.001(a)(2), 22.225(c); TEX. CIV. PRAC. & REM.CODE § 171.098; *Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 988 S.W.2d 731, 733 (Tex.1998). As explained below, the court of appeals' decision conflicts with *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171 (Tex.1997).

9. When an appeal from a denial of a motion to compel arbitration turns on a legal determination—here, the preclusive effect of the contract's disclaimer—we apply a de novo standard. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003) ("The trial court's determination of the arbitration agreement's validity is a legal question subject to de novo review."); *see also In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex.2006).

agreement specifically invoked. Federal and Texas law strongly favor arbitration,[10] and we uphold arbitration agreements that comport with traditional principles of contract law.[11] While an arbitration agreement procured by fraud is unenforceable,[12] the party opposing arbitration must show that the fraud relates to the arbitration provision specifically, not to the broader contract in which it appears.[13] If a trial court finds that the claim falls within the scope of a valid arbitration agreement, the "court has no discretion but to compel arbitration and stay its own proceedings." [14]

Forest Oil challenges the trial court's refusal to compel arbitration on three grounds: (1) the waiver-of-reliance provision in the contract precludes as a matter of law McAllen's ability to show the reliance element of fraudulent inducement; (2) McAllen cannot establish justifiable reliance on oral representations that directly contradict the terms of a signed contract; and (3) McAllen cannot establish justifiable reliance on statements made by an adversary. Because Forest Oil's first argument

defeats McAllen's claim, we do not reach the other two.

### 3. *Schlumberger* Controls this Relevantly Similar Case: The Parties' Broad Disclaimer of Reliance is Dispositive

Forest Oil contends the waiver-of-reliance provision in the settlement agreement conclusively defeats McAllen's fraudulent inducement claim. We agree.

■ We considered today's question in *Schlumberger Technology Corp. v. Swanson,* holding that a disclaimer of reliance on representations, "where the parties' intent is clear and specific, should be effective to negate a fraudulent inducement claim." [15] In that case—decided eighteen months before the settlement in the instant case and construing virtually identical disclaimer language—Schlumberger and the Swansons agreed to a complete release of claims to settle a dispute involving an underwater diamond-mining project off the South African coast.[16] The Swansons sold their interests in the venture to Schlumberger for roughly $1 million,[17] and

---

**10.** *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.1995); *see also In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 753 (Tex.2001). Whether a case is governed by the Federal Arbitration Act (FAA) or the TAA, many of the underlying substantive principles are the same; where appropriate, this opinion relies interchangeably on cases that discuss the FAA and TAA.

**11.** *In re D. Wilson Constr. Co.,* 196 S.W.3d at 781; *Webster,* 128 S.W.3d at 227.

**12.** TEX. CIV. PRAC. & REM.CODE § 171.001(b) ("A party may revoke the agreement only on a ground that exists at law or in equity for the revocation of a contract."); *see also Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 738 (Tex.2005).

**13.** *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). If a fraudulent-inducement claim attacks the broader contract, then the arbitrator, not a court, considers the matter. *See In re FirstMerit Bank, N.A.,* 52 S.W.3d at 758. In this case, we assume that the alleged fraud went to the arbitration agreement itself since Forest Oil does not argue otherwise. *See* TEX.R.APP. P. 53.2(f); *Ramos v. Richardson,* 228 S.W.3d 671, 673 (Tex.2007).

**14.** *In re FirstMerit Bank, N.A.,* 52 S.W.3d at 753–54; *see also* TEX. CIV. PRAC. & REM.CODE § 171.021.

**15.** 959 S.W.2d 171, 179 (Tex.1997).

**16.** *Id.* at 174.

**17.** *Id.*

the parties signed a settlement agreement, which included this waiver-of-reliance provision:

> [E]ach of us [the Swansons] expressly warrants and represents and does hereby state ... and represent ... that no promise or agreement which is not herein expressed has been made to him or her in executing this release, and that *none of us is relying upon any statement or representation of any agent of the parties being released hereby. Each of us is relying on his or her own judgment* and each has been represented by Hubert Johnson as legal counsel in this matter. The aforesaid legal counsel has read and explained to each of us the entire contents of this Release in Full, as well as the legal consequences of this Release.... [18]

After learning that Schlumberger later sold the interest to DeBeers for about $4 million, the Swansons sued, claiming Schlumberger had fraudulently induced them to accept the low-price buyout.[19] They maintained that when Schlumberger entered into the settlement, it knew that the Swansons' interest had a far higher value.[20]

Our decision in *Schlumberger* assumed that (1) the company knew during negotiations that it was misrepresenting the value of the interest, and (2) the misrepresentations were made with the intent of inducing the Swansons to settle.[21] Despite these assumptions, we held as a matter of law that the Swansons could not show fraudulent inducement.[22]

■ McAllen argues that *Schlumberger* is not controlling because we restricted

that holding to the record, and today's case involves "notable distinctions" and "material fact differences." McAllen's chief argument to distinguish *Schlumberger* is that *Schlumberger* "focuses on representations that were made regarding the underlying agreement's core subject matter." The dispute in *Schlumberger* concerned the value of the Swansons' interest in the sea-diamond project, and the alleged misrepresentation, as described by McAllen, "pertained to the very thing disputed, which was resolved 'once and for all' in the settlement." [23] This case is different, says McAllen, because the litigation that led to the 1999 settlement concerned royalty underpayments and mineral underdevelopment, issues having nothing to do with the environmental and personal-injury torts that sparked the current litigation and were excepted from the settlement agreement. That is, while the misrepresentation in *Schlumberger* "pertained to the very matter negotiated, settled, and released"—a factor that McAllen terms "the primary basis" for the Court's holding—the misrepresentation here did not concern known disputed matters (which were settled and released) but potential future disputes (which were set aside and reserved). And the disclaimer applies solely to representations about the former, not the latter. Under this banner, McAllen makes three subsidiary arguments.

First, McAllen stresses that the parties' settlement in *Schlumberger* definitively ended their valuation dispute. McAllen points out that the settled dispute was the only dispute, meaning that the agreed-to disclaimer was sufficiently specific to bar a

---

18. *Id.* at 180. The disclaimer in today's case is virtually the same. *See supra* note 4.

19. *Id.* at 174.

20. *Id.*

21. *Id.* at 178.

22. *Id.* at 181.

23. *Id.* at 179–81.

later fraudulent-inducement suit alleging one side misled the other about valuation.[24] By contrast, in this case, ending the royalty underpayment and mineral underdevelopment dispute was not the sole purpose of the settlement agreement, McAllen argues, making the disclaimer insufficiently specific to be applied to every representation made by Forest Oil.

McAllen identifies a valid factual distinction, but we fail to see how the disclaimer's preclusive effect should be different where, as here, the parties agreed to resolve litigated claims and arbitrate future ones. Although we noted in *Schlumberger* that the company's representations about the project's value and feasibility led to "the very dispute that the release was supposed to resolve,"[25] this language is more accurately interpreted as emphatic language, not limiting language. Our analysis in *Schlumberger* rested on the paramount principle that Texas courts should uphold contracts negotiated at arm's length by "knowledgeable and sophisticated business players" represented by "highly competent and able legal counsel," a principle that applies with equal force to contracts that reserve future claims as to contracts that settle all claims.[26] Essentially, *Schlumberger* holds that when knowledgeable parties expressly discuss material issues during contract negotiations but nevertheless elect to include waiver-of-reliance and release-of-claims provisions, the Court will generally uphold the contract. An all-embracing disclaimer of any and all representations, as here, shows the parties' clear intent. A "once and for all" settlement may constitute an *additional* factor urging

rejection of fraud-based claims, but a freely negotiated agreement to settle present disputes and arbitrate future ones should also be enforceable. Moreover, contrary to McAllen's assertions, the parties' discussions here *did* in fact address environmental matters. Not only were such matters "very important" to McAllen during settlement negotiations, as he testified, the parties also negotiated the surface agreement, which directly touches on the subject of Forest Oil's alleged fraud: environmental contamination on the McAllen Ranch. The surface agreement, incorporated into the settlement agreement, required Forest Oil to remove hazardous material and remediate past and future contamination. Therefore, the parties expressly negotiated the treatment of surface issues; environmental issues were an important aspect of the contract. Although the settlement agreement does not preclude all future environmental disputes, it does require arbitration of them.

Second, McAllen contends the settlement language itself compels a different result from *Schlumberger*. McAllen maintains that the disclaimer he signed is limited by its terms to representations about the matters released and settled, not to misrepresentations about matters reserved and excluded from the settlement. Here, the waiver-of-reliance provision states: "Each of the [plaintiffs] expressly warrants and represents and does hereby state and represent that no promise or agreement which is not herein expressed has been made to him, her, or it *in executing the releases* contained in this Agreement. . . ."[27] McAllen claims the isolated

24. *Id.* at 180 ("The sole purpose of the release was to end the dispute about the value of this commercial project between Schlumberger and the Swansons once and for all.").

25. *Id.* The reasoning of the case applies broadly to contracts generally, and we see no

reason to accept McAllen's restrictive interpretation.

26. *Id.*

27. *See supra* note 4.

phrase "in executing the releases" limits the waiver's application only to released claims because the phrase refers to "releases" in the plural. Because an arbitration provision is not a release, he reasons, the parties did not waive reliance with respect to misrepresentations concerning the matters reserved for arbitration. This argument discounts the second half of the same sentence, which makes clear the parties intended an exhaustive waiver unconfined to claims specifically released: "none of them is relying upon *any* statement or *any* representation of *any* agent of the parties being released hereby."[28] Contrary to McAllen's interpretation, a natural and contextual reading, given the repeated and all-encompassing "any" modifier, is not nearly so restrictive. It rather plainly means the parties, "in executing the releases," were not led astray by any representations whatsoever, even representations about nonreleased claims since those, too, can induce someone to release other claims. The disclaimer's words do not say what McAllen construes them to say, that there was "no promise or agreement *concerning the released claims* which is not herein expressed"; those four italicized words do not exist. Waiving reliance on statements made in executing the release provisions encompasses both claims released and reserved because even statements about the latter can nudge assent to settle the former. Notably, in this case, the release *itself* (in a section titled "Releases" no less) specifically requires arbitration, making clear that at the time of the agreement, the parties disclaimed reliance with respect to *all* decisions being made during negotiations, including the decision to resolve future disputes regarding environmental and personal-injury claims via arbitration. It is difficult to argue that Forest Oil's alleged fraud in obtaining arbitration bears no relation to the release when the arbitration requirement appears in the release. It is similarly difficult to square McAllen's argument with this explicit language from the settlement agreement, which incorporated the surface agreement: "disputes relating to this Agreement ... will be resolved by arbitration."[29]

Third, McAllen argues that fraudulent inducement "is essentially a meeting-of-the-minds argument," and there was no such meeting here regarding the arbitration agreement because Forest Oil knew all along of the potential for environmental claims while simultaneously assuring McAllen "there [were] no issues having to do with the surface." The parties thus had no common understanding of the facts underlying the contract, according to McAllen. But the settlement agreement itself belies this argument. The parties agreed that they might disagree and decided to arbitrate any environmental or personal-injury disputes that might later arise. If they were certain such disagreements would never arise, there would have been no need to reserve future claims for arbitration. The act of specifically carving out this discrete category of contamination claims shows that McAllen in fact placed little trust in Forest Oil's assurances that there were "no issues having to do with the surface" and that both parties recognized the possibility that McAllen might pursue future claims. Moreover, there is an arbitration provision in the environment-focused surface agreement itself, not only in the broader settlement agreement. According to the surface agreement,

28. *Id.*

29. *See also supra* note 3 ("Surface issues which arise in connection with the Leases shall be subject to that certain Arbitration Agreement set forth and described in the Settlement Agreement.").

"[s]urface issues which arise in connection with the Leases" must be arbitrated. McAllen knew environmental disputes might arise and agreed to arbitrate these disputes.

It is true that *Schlumberger* noted a disclaimer of reliance "will not always bar a fraudulent inducement claim,"[30] but this statement merely acknowledges that facts may exist where the disclaimer lacks "the requisite clear and unequivocal expression of intent necessary to disclaim reliance" on the specific representations at issue.[31] Courts must always examine the contract itself and the totality of the surrounding circumstances when determining if a waiver-of-reliance provision is binding. We did so in *Schlumberger*, but since courts of appeals seem to disagree over which *Schlumberger* facts were most relevant,[32] we now clarify those that guided our reasoning: (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other in an arm's length transaction; (4)

the parties were knowledgeable in business matters; and (5) the release language was clear. These factors were each present in *Schlumberger*, and they are each present in this case.

■ Refusing to honor a settlement agreement—an agreement highly favored by the law[33]—under these facts would invite unfortunate consequences for everyday business transactions and the efficient settlement of disputes. After-the-fact protests of misrepresentation are easily lodged, and parties who contractually promise not to rely on extra-contractual statements—*more than that, promise that they have in fact not relied upon such statements*—should be held to their word. Parties should not sign contracts while crossing their fingers behind their backs. McAllen accuses Forest Oil of deceit, but Forest Oil could make the same allegation against McAllen—who by his own admission and in writing is claiming the opposite now of what he expressly disclaimed then. It is not asking too much that parties not rely on extra-contractual statements that they contract not to rely on (or else set forth the relied-upon representations in the contract or except them from the dis-

---

**30.** 959 S.W.2d at 181.

**31.** *Id.* at 179.

**32.** *See, e.g., Warehouse Assocs. Corporate Ctr. II, Inc. v. Celotex Corp.,* 192 S.W.3d 225, 230–34 (Tex.App.–Houston [14th Dist.] 2006, pet. filed) (limiting *Schlumberger* to cases in which the parties resolve a long-running dispute that is also the topic of the alleged fraudulent representation); *Coastal Bank SSB v. Chase Bank of Texas, N.A.,* 135 S.W.3d 840, 844 (Tex.App.–Houston [1st Dist.] 2004, no pet.) (considering the broad language of the waiver-of-reliance provision to be the controlling factor); *IKON Office Solutions, Inc. v. Eifert,* 125 S.W.3d 113, 124–28 (Tex.App.–Houston [14th Dist.] 2003, pet. denied) (applying *Schlumberger* in a factual situation that did not involve a settlement agreement or a con-

tract that terminated the parties' relationship); *John v. Marshall Health Servs., Inc.,* 91 S.W.3d 446, 450 (Tex.App.–Texarkana 2002, pet. denied) (refusing to apply *Schlumberger* because "[h]ere, the contract was the beginning, not the end, of the relationship between" the parties).

**33.** *See Transp. Ins. Co. v. Faircloth,* 898 S.W.2d 269, 280 (Tex.1995) ("Settlements are favored because they avoid the uncertainties regarding the outcome of litigation, and the often exorbitant amounts of time and money to prosecute or defend claims at trial."); *Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848, 855 (Tex.1980) (Campbell, J., concurring) ("Settlement agreements are highly favored in the law because they are a means of amicably resolving doubts and preventing lawsuits.").

claimer). If disclaimers of reliance cannot ensure finality and preclude post-deal claims for fraudulent inducement, then freedom of contract, even among the most knowledgeable parties advised by the most knowledgeable legal counsel, is grievously impaired.

We conclude the arbitration requirement is integral to the overall release and the settlement agreement's waiver-of-reliance language applies by its terms to the parties' commitment to arbitrate. None of McAllen's arguments materially distinguishes our holding in *Schlumberger:* "a release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement." [34] Today's holding should not be construed to mean that a mere disclaimer standing alone will forgive intentional lies regardless of context. We decline to adopt a *per se* rule that a disclaimer automatically precludes a fraudulent-inducement claim, but we hold today, as in *Schlumberger*, that "on this record," the disclaimer of reliance refutes the required element of reliance.

### 4. Scope of the Arbitration Clause

▮▮▮ Having determined that McAllen's fraudulent-inducement claim cannot defeat the arbitration provision in the 1999 settlement agreement, we now turn to whether McAllen's claims fall within the scope of that arbitration provision.[35] Generally, after finding an agreement valid, a court considers the agreement's terms to determine which issues are arbitrable.[36] This arbitration agreement, however, removes the "scope determination" from the court and places it with the arbitration panel.[37] This provision, shrinking the court's traditional role and expanding the arbitrators', is not challenged on legal or public policy grounds.[38] Accordingly, we have no discretion but to direct the trial court to compel arbitration and stay McAllen's litigation.[39]

The remaining question is what should happen to the claims brought by the non-signatory plaintiffs who are not parties to the arbitration requirement (or to this appeal). Forest Oil concedes the trial court cannot order the nonsignatory plaintiffs to arbitration. Section 171.025(a) of the Civil Practice and Remedies Code provides that "[t]he court shall stay a proceeding that

---

**34.** 959 S.W.2d at 181.

**35.** The TAA allows personal-injury claims to be arbitrated when each party, on advice of counsel, has agreed to do so in a writing signed by the parties and their attorneys. Tex. Civ. Prac. & Rem.Code § 171.002(c). All parties to this appeal—or their predecessors in interest—and their attorneys signed the settlement agreement, which contains the arbitration agreement, so there is no statutory prohibition to arbitrating these claims.

**36.** *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001).

**37.** The arbitration provision reads: "All disputes arising out of or relating to the McAllen Ranch Leases, including, without in any way limiting the foregoing, disputes relating to this Agreement or disputes over the scope of this arbitration clause, will be resolved by arbitration in Houston, Texas, using three neutral arbitrators." While this provision clearly encompasses the McAllen Ranch claims, it is not clear that it includes the Santillana Ranch claims.

**38.** *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129–30 (Tex.2004) ("As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy."); *see also Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 663–64 (Tex.2008).

**39.** Tex. Civ. Prac. & Rem.Code § 171.021; *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999).

involves an issue subject to arbitration if an order for arbitration or an application for that order is made under this subchapter." Section 171.025(b) expressly allows for the severance of nonarbitrable issues.[40] Because the trial court is better positioned to make that determination in this instance, we remand the severance issue to that court.

However, as noted above, McAllen and Forest Oil agreed to arbitrate disputes over what the agreement covers. In terms of timing, the arbitrators should decide scope before the trial court decides severance. It is impractical (and probably impossible) for the trial court to decide the severability of the nonsignatories' claims before the arbitration panel has decided the scope of the signatories' claims. Accordingly, the trial court, in order to make an informed severance decision, should defer its decision until the arbitrators decide which issues are arbitrable.

### 5. Conclusion

McAllen may be correct that "[t]he facts of this case are not the facts of *Schlumberger*"—every case involves unique facts—but the decisive ones are assuredly close enough that *Schlumberger* binds this relevantly similar case. The unequivocal disclaimer of reliance in the parties' bargained-for settlement agreement conclusively negates as a matter of law the element of reliance needed to support McAllen's fraudulent-inducement claim. Because Forest Oil has demonstrated that a valid arbitration agreement exists, an agreement that empowers the arbitrators to determine what issues are arbitrable, we reverse the court of appeals' judgment and remand this case to the trial court to compel arbitration in accordance with our opinion.

Chief Justice JEFFERSON filed a dissenting opinion, in which Justice MEDINA joined.

Chief Justice JEFFERSON, joined by Justice MEDINA, dissenting.

According to the Court, the considerations most relevant to our analysis in *Schlumberger Technology Corp. v. Swanson,* 959 S.W.2d 171 (Tex.1997), were:

(1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other in an arm'slength transaction; (4) the parties were knowledgeable in business matters; and (5) the release language was clear.

268 S.W.3d 60. My disagreement with the Court centers on the first point. Under the Court's analysis, a party may intentionally misrepresent facts essential to the bargain to induce the other to sign, as long as the agreement says reliance is waived. This is not sound policy, and *Schlumberger* does not support this result. I would hold that McAllen's fraudulent inducement claim survives the disclaimer of reliance at issue here. Because the Court does not, I respectfully dissent.

### I

### *Schlumberger*

In *Schlumberger,* we noted that we had previously held "as a matter of policy, that a merger clause can be avoided based on fraud in the inducement and that the parol evidence rule does not bar proof of such fraud," and that "[i]n doing so, we brought

---

**40.** Tex. Civ. Prac. & Rem.Code § 171.025(b) ("The stay applies only to the issue subject to arbitration if that issue is severable from the remainder of the proceeding.").

the law on the subject 'into harmony with the great weight of authority, with the rule of the Restatement of the Law of Contracts, and with the views of eminent textwriters.'" *Schlumberger*, 959 S.W.2d at 179 (quoting *Dallas Farm Mach. Co. v. Reaves*, 158 Tex. 1, 307 S.W.2d 233, 239 (1957)). This remains the general rule in Texas. *See Prudential Ins. Co. of Am. v. Jefferson Assocs.*, 896 S.W.2d 156, 162 (Tex.1995); *see also Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985) (admitting parol evidence to establish misrepresentation in DTPA claim); Restatement (Second) of Contracts, § 214 cmt. c ("What appears to be a complete and binding integrated agreement may be a forgery, a joke, a sham, or an agreement without consideration, or it may be voidable for *fraud*, duress, mistake, or the like, or it may be illegal. Such invalidating causes need not and commonly do not appear on the face of the writing. *They are not affected even by a 'merger' clause.*") (emphasis added). We then noted that "[j]uxtaposed to this authority, we have a competing concern—the ability of parties to fully and finally resolve disputes between them." *Schlumberger*, 959 S.W.2d at 179. The Court reads *Schlumberger* as settling these competing concerns by precluding a fraudulent inducement claim where there is a disclaimer of reliance and the factors listed above are present.

But *Schlumberger* is not so broad. There, we held that, where the four other factors listed by the Court are present, "a release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement." *Id.* at 181. The release in *Schlumberger* did not contain an express waiver of fraudulent inducement claims, but did disclaim reliance on representations about specific matters in dispute. *Id.*

at 180. The release itself noted that "'there [wa]s considerable doubt, disagreement, dispute and controversy with reference to the validity of the [claim being settled],'" and the "sole purpose of the release was to end [that] dispute." *Id.* The *Schlumberger* Court therefore concluded "that the parties contemplated, by the inclusion of [the disclaimer of reliance], that the Swansons would not rely on any representations of Schlumberger about the commercial feasibility and value of this project, which, after all, was the very dispute that the release was supposed to resolve." *Id.*

That the *Schlumberger* Court limited its holding to a release "that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute" is clear from the rest of the opinion. *Id.* at 181. Indeed, we "emphasize[d]" in *Schlumberger* "that a disclaimer of reliance or merger clause will not always bar a fraudulent inducement claim." *Id.* We cited *Prudential Insurance Co. of America v. Jefferson Associates*, in which we said "[a] buyer is not bound by an agreement to purchase something 'as is' that he is induced to make because of a fraudulent representation or concealment of information by the seller." *Prudential*, 896 S.W.2d 156, 162 (Tex. 1995). This would be a strange authority to cite if *Schlumberger* were as sweeping as the Court suggests: it is difficult to imagine a party making fraudulent representations on a subject that has not been discussed. And while the Court states that "this statement merely acknowledges that facts may exist where the disclaimer lacks 'the requisite clear and unequivocal expression of intent necessary to disclaim reliance' on the specific representations at issue," it does so without addressing *Prudential*, instead quoting an earlier passage

from *Schlumberger.* 268 S.W.3d at 55 (quoting *Schlumberger,* 959 S.W.2d at 179).

In sum, in *Schlumberger* we balanced parties' need to settle disputes against our strong aversion to fraud. The result was a narrow exception to the rule that integration clauses do not bar fraudulent inducement claims. By expanding *Schlumberger,* the Court's holding will force courts to honor contracts indisputably induced by fraud on the basis of blanket reliance waivers, like the one at issue here. I would not.

## II

### McAllen's Fraudulent Inducement Claim

As discussed above, under *Schlumberger,* to bar a fraudulent inducement claim, a disclaimer of reliance must either expressly waive the claim or disclaim reliance on representations about the specific disputed matter, *Schlumberger,* 959 S.W.2d at 181; otherwise, the general rule that integration clauses do not bar fraudulent inducement claims applies. The disclaimer in this case does neither. The relevant portion of the disclaimer reads:

> Each of the Plaintiffs and Intervenors expressly warrants and represents and does hereby state and represent that no promise or agreement which is not herein expressed has been made to him, her, or it in executing the releases contained in this Agreement, and that none of them is relying upon any statement or any representation of any agent of the parties being released hereby.

This disclaimer makes no explicit reference to fraudulent inducement. The question, then, is whether it disclaims reliance on representations about a specific disputed matter in the agreement. While the disclaimers in this case and *Schlumberger* may appear to be "virtually identical," 268

S.W.3d at 60, the factual differences between this case and *Schlumberger* are critical. In *Schlumberger,* there was essentially one dispute—specifically described in the agreement—being settled, and therefore, "[b]ecause courts are to assume that the parties intended every contractual provision to have some meaning," the Court was able to "presume" that the disclaimer of reliance applied specifically to representations about that sole dispute. *Schlumberger,* 959 S.W.2d at 180. In the instant case, in contrast, the settlement agreement covered a number of topics, chiefly royalty underpayment and mineral underdevelopment. Thus, unlike *Schlumberger,* we cannot presume that the disclaimer of reliance referred specifically to environmental issues, and the general rule that fraudulent inducement claims are not barred by integration clauses should apply.

## III

### Forest Oil's Remaining Issues

Forest Oil argues that McAllen could not have justifiably relied on Forest Oil's representation that there were no existing issues with the surface because that representation was contradicted by the agreement's express terms. Because the surface agreement contains no contrary statement regarding surface conditions, it is not necessary to examine this claim in detail.

Forest Oil also argues that McAllen could not justifiably rely on the representation of his litigation adversary during settlement negotiations. Forest Oil cites *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* for the proposition that "a third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context." *McCamish,* 991 S.W.2d 787, 794 (Tex.1999). This statement, however, refers not to whether attorneys'

statements can provide the grounds for a fraudulent inducement claim, but to individual attorneys' liability for negligent misrepresentation under the Restatement (Second) of Torts section 552. *Id.* at 795 (concluding "that there is no reason to exempt lawyers from the operation of section 552"). Regardless, there is evidence that McAllen relied not only on the statements of "an unidentified lawyer for one of the four defendants," 268 S.W.3d at 55, but on representations made by the parties themselves:

Q. (By Mr. Mancias) Yes, sir. Were you told in no uncertain terms *by the oil companies,* including Forest Oil Company, that there were no contaminants or pollutants on the surface of your property?

A. (By Mr. McAllen) *Yes.* And all the Forest attorneys were there. I believe Forest Doran himself was there.

Q. Who is Forest Doran?

A. I believe he's the majority stockholder of Forest Oil Company.

Q. Can you tell the Judge whether or not Mr. Doran was present when those representations you just testified about were made to you?

A. That, I can't recall.

Q. All right, sir. But the attorneys were present?

A. The attorneys—his attorneys were present.

* * *

A. But during the process, *the owners for Forest and Conoco and everybody else who was involved in the lawsuit assured me that there was no issues* [sic] *having to do with the surface,* and if I wanted to get this settlement agreement behind us, I had to do that. But they were very convincing.

(Emphasis added.) McAllen's reliance on these statements was not, therefore, unjustifiable as a matter of law.

## IV

### Conclusion

Today the Court replaces *Schlumberger*'s requirement that a release must "clearly express[ ] the parties' intent to waive fraudulent inducement claims, or ... disclaim[ ] reliance on representations about specific matters in dispute" in order to preclude a fraudulent inducement claim, 959 S.W.2d at 181, with the requirement that the parties merely "specifically discussed the issue which has become the topic of the subsequent dispute" during negotiations, 268 S.W.3d 60. Courts, including this one, have long battled the specter of fraud in contracts; I fear that the Court's opinion may one day be a weapon in the hands of those who profit from it. I respectfully dissent.