Dissenting opinion
issued January 19, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00728-CV

———————————

Peter Fazio, Shari Fazio, and Eric Fazio, Appellants

 

V.

 

Cypress/GR Houston I, L.P.;
Cypress/GR Houston, Inc.; And Cypress Equities, INC., Appellees

 

and

 

Cypress/GR Houston I, L.P.;
Cypress/GR Houston, Inc.; And Cypress Equities, INC., Appellants

 

V.

 

Peter Fazio, Appellee



 



 

On Appeal from the 129th District
Court

Harris County, Texas



Trial Court Case No. 2004-65110



 

DISSENTING OPINION

          I respectfully dissent.  I would affirm the trial court’s ruling that
the parties’ disclaimer of reliance foreclosed any subsequent claim that the
buyer was fraudulently induced to enter into the transaction.  My disagreement with the majority’s
conclusion is primarily based upon my conclusion that the Purchase Agreement
clearly and unequivocally expresses an intention to disclaim the buyer’s
reliance on the seller’s representations and omissions from representations
with respect to the economic condition of the property.

As a
predicate matter, the majority errs by concluding that the due diligence terms
of the Letter of Intent, including the provision that “[t]he Seller will
provide Buyer with all information in their possession,” “became a binding
agreement upon the execution of the Purchase Agreement.”  Majority Op. at 7.  Instead, as is customary and as the parties
expressly contemplated at the time the LOI was executed, the terms of the LOI
were displaced by and replaced with the terms of the Purchase Agreement.  The LOI itself provided that it was “an
expression of understanding and intention only, and if accepted, will provide
guidance for drafting a formal Purchase Agreement.”  The LOI went on to specify that “Terms and
conditions set forth in this proposal shall not be binding on both parties
until and unless a formal Purchase Agreement is executed and delivered to both
parties.”

          When
the parties did execute a formal Purchase Agreement, they replaced the due diligence
provisions of the LOI with a much more detailed “Inspection” provision,
contained in Article V of the Agreement. 
Consistent with the parties’ expectations as expressed in the LOI, the
Purchase Agreement also contained a merger clause which provided: “This
Agreement contains the entire agreement of the parties hereto.  There are no other agreements, oral or
written, and this Agreement can be amended only by written agreement signed by
the parties hereto, and by reference, made a part hereof.”  Thus the parties’ express agreement as it
pertains to the seller’s disclosure obligations is contained in the Purchase
Agreement, and not in the LOI.

          Divorcing
the terms of the LOI from the analysis and focusing solely upon the terms of
the Purchase Agreement, that contract includes a clear and unequivocal
expression of intent to disclaim the buyer’s reliance on the completeness of
the documentation provided to it by the seller. 
Article V of the Purchase Agreement contains the parties’ agreement
about the parameters of the buyer’s opportunity to perform due diligence.  Section 5.1 is entitled “Inspection
Period,” and it provides for a 30-day period, commencing on the “Effective
Date,” during which time the buyer was afforded reasonable opportunities to
enter and inspect the property.  During
the first 10 days of the Inspection Period, the seller was required to deliver
a group of “Documents” to the purchaser, as defined in section 5.2, which is
devoted to describing and limiting the seller’s disclosure obligations.  The “Documents” to be disclosed were “copies
of the Lease and all amendments thereto,” “the Survey,” “copies of any Plans,”
“to the extent allowed by the author, copies of all existing soil, engineering,
architectural, and environmental reports covering the Property in Seller’s
possession,” “copies of all Service Contracts, if any,” and “copies of all
Permits.”  Section 5.2 included
provisions for the treatment of proprietary information within the “Documents”
and for the return of all “Documents” in the event the Purchase Agreement was
terminated.

          Importantly,
section 5.2(d) is entitled “No Representation or Warranty by Seller.”  In it, the buyer acknowledged:

[E]xcept as otherwise specifically set forth in this
Agreement, Seller has not made and does not make any warranty or representation
regarding the truth, accuracy, or completeness of, the Documents or the source(s)
thereof, and that Seller has not undertaken any independent investigation as to
the truth, accuracy, or completeness of the Documents and is providing the
Documents solely as an accommodation to Purchaser. 



The foregoing language did not
affirmatively authorize the seller to misrepresent the truth or to knowingly
conceal information, but it could reflect the parties’ intention to limit the
scope of the seller’s obligations to search for and investigate the “Documents”
to be provided by the seller.  More
critically, the following sentence provided:

Except with respect to any express warranties made
in this Agreement, Seller expressly disclaims and Purchaser waives any and all
liability for representations or warranties, express or implied, statements of fact,
and other matters contained in the Documents, or for any omissions from the Documents,
or in any other written or oral communications transmitted or made available to
Purchaser. 



This sentence expressly addressed
the seller’s “liability” in connection with providing the “Documents.”  The sentence clearly and unequivocally
provided that the seller “expressly disclaims”—and that the buyer “waives”—“any and all liability” for everything “contained in the Documents.”[1]  And beyond the information affirmatively
provided by disclosing the “Documents,” the express disclaimer and waiver of
liability also extended to “any omissions” from information was provided,
regardless of whether it should have been disclosed as part of the
“Documents.”  That same seller’s
disclaimer of liability and buyer’s waiver of liability extended to “any
omissions from the Documents, or in any other written or oral communications
transmitted or made available to Purchaser.”[2]  Consistent with these provisions immunizing
the seller from liability for errors or omissions in communications to the
buyer, section 5.2(d) concluded by affirming that the buyer was accepting
responsibility for developing the information necessary to satisfy itself about the property it was buying:

Except with respect to any express warranties made
in this Agreement, Purchaser shall rely solely upon its own investigation with
respect to the Property, including, without limitation, the Property’s
physical, environmental, or economic condition, compliance or lack of
compliance with any ordinance, order, permit, or regulation or any other
attribute or matter relating thereto.



The buyer’s specific affirmation
that it was relying solely upon its own investigation, and the parties’
deliberate intent to foreclose both liability for the seller’s affirmative
communications to the buyer and omissions therefrom, are further confirmed by
the Purchase Agreement’s inclusion of an “as-is” provision in section 5.5,
which provided, in relevant part:

Property Conveyed “AS IS”.

 

(a)     EXCEPT AS OTHERWISE PROVIDED HEREIN OR IN THE DEED . . .
(2) PURCHASER HEREBY EXPRESSLY ACKNOWLEDGES AND AGREES THAT (A) PURCHASER
HAS OR WILL HAVE, PRIOR TO THE END OF THE INSPECTION PERIOD, THOROUGHLY
INSPECTED AND EXAMINED THE PROPERTY TO THE EXTENT DEEMED NECESSARY BY PURCHASER
IN ORDER TO ENABLE PURCHASER TO EVALUATE THE PURCHASE OF THE PROPERTY AND
(B) PURCHASER IS RELYING SOLELY UPON SUCH INSPECTIONS, EXAMINATIONS, AND
EVALUATION OF THE PROPERTY BY PURCHASER IN PURCHASING THE PROPERTY ON AN “AS
IS”, “WHERE IS” AND “WITH ALL FAULTS” BASIS, WITHOUT REPRESENTATIONS,
WARRANTIES OR COVENANTS, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE.     

. . . .   



          Although
the majority opinion characterizes the Texas Supreme Court’s recent Italian Cowboy opinion as containing a
fact pattern that “closely mirrors” this case, see Majority Op. at 25, I disagree with that comparison.  The language relied upon in that case as a
purported disclaimer of reliance provided: “Tenant acknowledges that neither
Landlord nor Landlord’s agents, employees, or contractors have made any
representations or promises with respect to the Site, the Shopping Center or this
Lease except as expressly set forth herein.” 
Italian Cowboy Partners, Ltd. v.
Prudential Ins. Co. of Am., 341 S.W.3d 323, 328 (Tex. 2011).  The Court compared this language to the
provisions found to be effective disclaimers of reliance in Schlumberger[3] and Forest
Oil,[4]
and concluded that lease language at issue in the case did not include clear
and unequivocal language expressly disclaiming reliance on representations and
affirming reliance on one’s own judgment. 
See id. at 336.  Instead, the Italian Cowboy Court found the language at issue to indicate
“nothing more than the provisions of a standard merger clause,” which is not
sufficient to indicate an intent to disclaim reliance.  Id.
at 334.

          This
case is distinguishable from Italian
Cowboy in at least two respects. 
First, the critical language in the Purchase Agreement uses the term
“rely” in providing that the “Purchaser shall rely solely upon its own investigation with respect to the Property.”  (Emphasis supplied.)  “Rely” is also used in the “as-is” clause,
where the buyer affirmed it was “RELYING SOLELY UPON SUCH INSPECTIONS,
EXAMINATIONS, AND EVALUATION OF THE PROPERTY” as it deemed necessary to enable
its evaluation of the transaction.  This factor was expressly noted in Italian Cowboy to distinguish that case
from Schlumberger and Forest Oil, both of which featured
contracts using the term “rely” to clearly and unequivocally indicate a party’s
intent to rely on its own judgment.  See id. at 336 (relying upon language
quoted in notes 3 & 4, supra).  Second, the key language at issue cannot be
characterized as merely echoing the intent and purpose of a merger clause.  Rather, the language specifically references
“liability” arising from representations or omissions from documents or other
written or oral communications, and it clearly and unequivocally provides that
the seller disclaims and that the buyer waives “any and all” liability of that
nature.

The buyer-plaintiffs’ claims in this case arise from
their allegation that the seller-defendants failed to disclose information
about economic risks to the property owner, i.e., the financial condition of
the property’s tenant and the tenant’s requests for rent relief, facts which
affected the value of the income stream expected from renting the property to
that tenant.  I would hold that the
Purchase Agreement’s express disclaimer and waiver of seller liability arising
from representations or omissions in the parties’ communications leading up to
the closing of the transaction, combined with the acknowledgement that “Purchaser
shall rely solely upon its own investigation with respect to the Property,
including, without limitation, the Property’s . . . economic condition,” constitutes clear, specific, and unequivocal
disclaimer of reliance sufficient to preclude this subsequent claim of
fraudulent inducement.  See Forest Oil Corp. v.
McAllen, 268 S.W.3d
51, 61 (Tex. 2008); Schlumberger Tech.
Corp. v. Swanson, 959 S.W.2d 171, 179 (Tex. 1997).

          The
question remains, however, whether the disclaimer is binding in light of the
totality of circumstances surrounding this contract.  See Forest Oil, 268 S.W.3d at 61; Schlumberger, 959 S.W.2d at 179.  This is a legal question which we review de
novo.  Forest Oil, 268 S.W.3d at 55. 
The factors that guided the Supreme Court’s reasoning in Schlumberger and Forest Oil included:

(1) the terms of the contract were negotiated,
rather than boilerplate, and during negotiations the parties specifically
discussed the issue which has become the topic of the subsequent dispute; (2)
the complaining party was represented by counsel; (3) the parties dealt with
each other in an arm’s length transaction; (4) the parties were knowledgeable
in business matters; and (5) the release language was clear. 



Id. at 60.  The Fazios do not dispute that this was an arm’s
length transaction.  As explained above,
the language disclaiming reliance and waiving liability based upon seller
representations was clear.

The other
aspects of this transaction also support enforcing the agreement as
written.  Fazio is an experienced and
sophisticated real estate investor.  This
was a $7,667,000 commercial transaction. 
The agreement was not presented to Fazio as non-negotiable boilerplate—in fact, he requested changes, including a
change to delete any reference to him having the agreement reviewed by legal
counsel.  He similarly could have
requested deletion of all or part of section 5.2(d) and 5.5.[5]  Moreover, Fazio’s request to remove a
reference to his use of counsel demonstrated not only that he had the
opportunity to review and negotiate the language of the contract, but also that
his choice to forego the assistance of counsel was deliberate.  Fazio obviously had ample resources to
consult counsel.  He routinely employed
the professional assistance of real estate brokers, but chose not to employ the
professional assistance of legal counsel. 
Under such circumstances, he assumed the risk of proceeding without counsel,
and his choice in that regard should not excuse him from being bound to the
terms of his contract.

Unlike Schlumberger and Forest Oil, both of which involved settlement agreements, a final
resolution of all disputes among the parties is not a factor informing the
overall circumstances of this real estate transaction.  And the record does not reflect specific
negotiations about the provision at issue. 
Nevertheless, I would hold that, on balance, these factors are
outweighed by the clear language of the contract, the arm’s-length nature of
the transaction, the experience and sophistication of the parties, the
magnitude of the transaction, and the complaining party’s deliberate choice to
forego the assistance of legal counsel despite manifest opportunity and ability
to have the assistance of an attorney.

          Accordingly, I would affirm the trial court’s rendition of
judgment notwithstanding the verdict.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice

 

Panel consists of Justices Keyes, Sharp, and
Massengale.

Justice
Massengale, dissenting.











[1]
          In
the legalese of the Purchase Agreement, the matters “contained in the Documents” for which the “Seller
expressly disclaims and the buyer waives any and all liability” are described
as: (a) “representations or
warranties, express or implied,” (b) “statements of fact,” and (c) “other matters contained” therein.

 





[2]
          The majority mistakenly analyzes section 5.2(d)’s
reference to “omissions” as if it were limited to “omissions from the
Documents,” see Majority Op. at 31–32, and
did not also embrace “omissions . . . in any other written or oral
communications transmitted or made available to Purchaser.”  This is a grammatically incorrect reading of
the contract.  The phrase “in any other
written or oral communications transmitted or made available to Purchaser”
properly can be read only as a modification of “omissions.”  The only other conceivable function of that
phrase in the sentence would be to modify the reference to “liability,” but
that reading would require the implausible assumption that the contract was
drafted to disclaim and waive “liability . . . in any other written or oral communications transmitted or made
available to Purchaser.”  (Emphasis
supplied.)  One does not ordinarily speak
of liability “in” a matter, but of liability “for” something.  The correct, and more natural, reading of the
contract language is that liability is disclaimed and waived “for any omissions . . . in any other written or oral
communications transmitted or made available to Purchaser.”  (Emphasis supplied.)  

 





[3]
          The
Italian Cowboy opinion quoted and
relied upon the following language from the settlement agreement at issue in Schlumberger Tech. Corp. v. Swanson, 959
S.W.2d 171 (Tex. 1997):

 

[E]ach
of us . . . expressly warrants and represents . . . that no promise or
agreement which is not herein expressed has been made to him or her in
executing this release, and that none of us is relying upon any statement or representation of any agent of the
parties being released hereby.  Each of
us is relying on his or her own
judgment . . . .

 

Italian Cowboy,
341 S.W.3d at 336 (quoting Schlumberger,
959 S.W.2d at 180 (emphasis added in Italian
Cowboy)).

 





[4]
          The
opinion quoted and relied upon the following language from the settlement
agreement at issue in Forest Oil Corp. v.
McAllen, 268 S.W.3d 51 (Tex. 2008):

 

[We]
expressly represent and warrant . . . that no promise or agreement which is not
herein expressed has been made to them in executing the releases contained in
this Agreement, and that they are not relying
upon any statement or representation of any of the parties being released
hereby.  [We] are relying upon [our] own judgment . . . .

 

Italian Cowboy,
341 S.W.3d at 336 (quoting Forest Oil,
268 S.W.3d at 54 (emphasis added in Italian
Cowboy)).

 





[5]
          See Prudential
Ins. Co. v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 161 (Tex. 1995) (noting that
instead of agreeing to buy property “as is,” a buyer “could insist instead that
the seller assume part or all of that risk by obtaining warranties
to the desired effect,” and further noting that “[i]f the seller is willing to
give such assurances, however, he will ordinarily insist upon additional
compensation”).