**Affirmed, In Part, Reversed and Rendered, In Part, and Majority and Concurring Opinions filed December 28, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00125-CV

---

**TEXAS STANDARD OIL & GAS, L.P., GRIMES ENERGY CO., AND PETROVAL, INC, Appellants**

**V.**

**FRANKEL OFFSHORE ENERGY, INC., Appellee**

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2008-55176**

---

## CONCURRING OPINION

This case presents what appears to be an issue of first impression under Texas law—whether there should be a general prohibition on the enforcement of releases of fraudulent-inducement claims based upon alleged misrepresentations

contained in the same contract. For reasons explained below, Texas courts should impose no such prohibition. Under the unambiguous language of the release at issue in this appeal, the releasing party waived all claims for fraud in the inducement of the contract containing the release, regardless of whether the alleged fraud was expressed in the contract. Because this release is enforceable under Texas law, the trial court erred in refusing to enforce it, and this court may sustain appellant's first issue without addressing the legal sufficiency of the evidence supporting a finding of fraudulent-inducement based upon a purported misrepresentation in the contract.

### *GTP argues that Frankel released all fraudulent-inducement claims.*

Appellants Texas Standard Oil & Gas, L.P., Grimes Energy Co., and PetroVal, Inc. (collectively, "GTP") appeal a judgment in favor of Frankel Offshore Energy, Inc. ("Frankel") in this suit arising out of the parties' failed venture for development of oil and gas prospects.

Frankel sued GTP seeking damages for various claims, including breach of fiduciary duty. Frankel also sought rescission of a settlement agreement previously executed by the parties in which Frankel released all of its claims, except claims arising in the future out of the obligations under the agreement ("Settlement Agreement"). GTP counterclaimed based upon Frankel's alleged breach of the Settlement Agreement. After a jury returned a verdict which would have resulted in no award of damages to Frankel on any claims, including breach of fiduciary duty, the trial court ordered that Frankel recover equitable-disgorgement awards totaling $4,010,175.06 based upon GTP's alleged breaches of fiduciary duty. The trial court also (1) ordered rescission of the Settlement Agreement based on the jury's finding that GTP fraudulently induced Frankel to execute the agreement; and

2

(2) concluded that a release of fraudulent-inducement claims in the settlement agreement between the parties was unenforceable because the parties were fiduciaries.

On appeal, GTP argues that this court should reverse the trial court's order of rescission and the equitable-disgorgement awards, but also requests an award of damages in its favor based on an additional jury finding that Frankel breached the Settlement Agreement. Under its first issue, GTP asserts that (1) in a release provision in the Settlement Agreement ("Release"), Frankel clearly and unequivocally agreed to waive all of its claims for fraud in the inducement of the agreement ("Fraudulent-Inducement Release"); and (2) under Texas law, this release is an enforceable waiver of fraudulent-inducement claims that bars Frankel's entire fraudulent-inducement claim as a matter of law.

***Frankel unambiguously and unequivocally released all claims for fraud in the inducement of the Settlement Agreement.***

The Release reads in pertinent part as follows:

> [Frankel] . . . does hereby release, acquit and forever discharge Grimes, Texas Standard and PetroVal . . . from all existing, future, known and unknown claims, demands and causes of action for all existing, future, known and unknown damages and remedies, which have accrued or may ever accrue to [Frankel] . . . for or on account of (i) the claims made by it in the Bankruptcy Proceeding, (ii) any and all claims which might relate in any way to such claims, (iii) any and all claims which were brought or which could have been brought in the Bankruptcy Proceeding or in any other litigation; all of the foregoing shall include, but not be limited to, all claims, demands, and causes of action of any nature, whether in contract or in tort, or arising under or by virtue of any statute or regulation, that are now recognized by law or that may be created or recognized in the future by any manner, including without limitation, by statute, regulation or judicial decision, for past, future, known and unknown personal injuries,

3

property damages, and all other losses, damages or remedies of any kind that are now recognized by law or that may be created or recognized in the future, by any manner, including without limitation, by statute, regulation or judicial decision, including, but not limited to all actual damages, all exemplary and punitive damages, all statutory interest or penalties of any kind, *fraud in the inducement of this Agreement*, and pre- and post judgment interest on any and all claims, excepting only such claims as may arise in the future out of the obligations under this Agreement.[1]

Under the unambiguous language of this provision Frankel unequivocally released all claims for fraud in the inducement of the Settlement Agreement. The sole exception to the Release covers "such claims as may arise in the future out of the obligations under this Agreement." Claims that a contracting party was fraudulently induced to enter into a contract arise from general obligations imposed by law; such claims do not arise from the contract in question. *See Formosa Plastics Corp. v. Presidio Engineers and Contractors*, 960 S.W.2d 41, 46 (Tex. 1998) (stating that "it is well-established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself"). Any claim by Frankel that it was fraudulently induced to enter into the Settlement Agreement does not arise "in the future [after the execution of the Settlement Agreement] out of the obligations under [the Settlement Agreement]." *See id*.

The only reasonable interpretation of the Fraudulent-Inducement Release is that Frankel releases and disclaims all claims that GTP fraudulently induced Frankel to enter into the Settlement Agreement, regardless of the nature of the alleged fraudulent conduct and regardless of whether the alleged fraud is a failure to disclose or a misrepresentation allegedly contained in the language of the

---

[1] (emphasis added)

Settlement Agreement itself. The Release does contain an exception that includes claims for breach of the Settlement Agreement. Frankel, a sophisticated party, knowledgeable in business matters and represented by counsel, negotiated and voluntarily agreed to a contract under which it unambiguously released all fraudulent-inducement claims, including any based upon alleged misrepresentations in the contract. Under the Settlement Agreement, GTP also agreed to a substantially similar release, in which GTP released all fraudulent-inducement claims, including any based upon an alleged misrepresentation in the agreement. These provisions are strong evidence that the parties to the Settlement Agreement did not want the right to sue for fraud in the inducement to remain a viable option for any party that might later become unsatisfied with the outcome of their agreement.

### *Under Texas law, contracting parties may disclaim fraudulent inducement claims under certain circumstances.*

Parties sometimes use contractual language in an attempt to disclaim as a matter of law claims by a contracting party that the party was fraudulently induced to enter into the contract. In three cases decided over the last fifteen years, the Supreme Court of Texas has addressed whether contractual language effected such a disclaimer. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 331–36 (Tex. 2011); *Forest Oil Corp. v. McAllen,* 268 S.W.3d 51, 56–61 (Tex. 2008); *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 177–81 (Tex. 1997). The main issue in this appeal is whether, in the Release, Frankel disclaimed as a matter of law all claims that it had that it was fraudulently induced to execute the Settlement Agreement.

The threshold requirement for an effective disclaimer of fraudulent-inducement claims is that the contract language be "clear and unequivocal" in its

expression of the parties' intent either to disclaim reliance or to disclaim fraudulent-inducement claims. *See Italian Cowboy Partners,* 341 S.W.3d at 331–32 & n.4, 336, 337 n. 8; *Forest Oil Corp.,* 268 S.W.3d at 60; *Schlumberger Tech. Corp.,* 959 S.W.2d at 179. In imposing this requirement, the Supreme Court of Texas has balanced three competing concerns. First, courts seek to avoid an unintentional surrender of fraudulent-inducement claims by a victim of fraud. *See Italian Cowboy Partners,* 341 S.W.3d at 332 (expressing "a clear desire to protect parties from unintentionally waiving a claim for fraud"). Second, the law favors granting parties the freedom to contract knowing that courts will enforce their contracts' terms, as well as the ability to contractually resolve disputes between themselves fully and finally. *See id.*; *Forest Oil,* 268 S.W.3d at 58. Third, a party should not be permitted to claim fraud when he represented in the parties' contract that he did not rely on a representation because parties who contractually promise that they in fact have not relied upon extra-contractual statements should be held to their word. *Forest Oil Corp.,* 268 S.W.3d at 60.

The Supreme Court of Texas has held that language in which a contracting party states that the other contracting party has not made any representations or promises except as set forth in the contract is not, by itself, sufficient to constitute the required clear and unequivocal expression of intent to disclaim reliance or fraudulent-inducement claims. *See Italian Cowboy Partners,* 341 S.W.3d at 333–36. But, the high court has concluded that this requirement was satisfied by language that included an unambiguous waiver of reliance on any statement or representation of the opposing parties. *See Forest Oil Corp.,* 268 S.W.3d at 54 n.4, 56–60; *Schlumberger Tech. Corp.,* 959 S.W.2d at 179–81. The Supreme Court of Texas also has stated that waiver-of-reliance language is not required if the parties execute "a release that clearly expresses the parties' intent to waive fraudulent

inducement claims." *Italian Cowboy Partners,* 341 S.W.3d 332 n.4 (internal quotation marks omitted). *See also Schlumberger Tech. Corp.,* 959 S.W.2d at 181 (stating that "a release that clearly expresses the parties' intent to waive fraudulent inducement claims" can preclude a claim of fraudulent inducement).

If the contract language does not contain a "clear and unequivocal" expression of the parties' intent either to disclaim reliance or to disclaim fraudulent-inducement claims, then a court will not enforce the disclaimer, and the fraudulent-inducement claim is not barred as a matter of law. *See Italian Cowboy Partners,* 341 S.W.3d at 337 n. 8; *Forest Oil Corp.,* 268 S.W.3d at 60; *Schlumberger Tech. Corp.,* 959 S.W.2d at 179; *Allen v. Devon Energy Holdings, L.L.C.,* 367 S.W.3d 355, 382 (Tex. App.—Houston [1st Dist.] 2012, pet. filed) (citing *Italian Cowboy* and stating that clarity requirement is threshold hurdle which must be passed for enforcement of disclaimer and that provision lacking clear and unequivocal disclaimer will not preclude fraudulent-inducement claim regardless of surrounding circumstances). If the contract language contains a "clear and unequivocal" expression of the parties' intent either to disclaim reliance or to disclaim fraudulent-inducement claims, then courts determine whether the disclaimer should be enforced based upon consideration of the contract and the totality of the surrounding circumstances, including (1) whether the terms of the contract were negotiated or boilerplate, (2) whether during negotiations the parties specifically discussed the issue which became the topic of the subsequent dispute, (3) whether the complaining party was represented by counsel, (4) whether the parties dealt with each other at arm's length, and (5) whether the parties were knowledgeable in business matters. *See Italian Cowboy Partners,* 341 S.W.3d at 337 n. 8; *Forest Oil Corp.,* 268 S.W.3d at 60–61. If the situation involves a "once for all" settlement of claims, this may constitute an additional factor in favor of

enforcing the disclaimer. *See Italian Cowboy Partners,* 341 S.W.3d at 337 n. 8; *Forest Oil Corp.,* 268 S.W.3d at 58.

### The language of the Fraudulent-Inducement Release is clear and unequivocal in its expression of the parties' intent to disclaim fraudulent-inducement claims.

The threshold inquiry for an effective disclaimer of fraudulent-inducement claims is whether the contract language is "clear and unequivocal" in its expression of the parties' intent either to disclaim reliance or to disclaim fraudulent-inducement claims. *See Italian Cowboy Partners,* 341 S.W.3d at 331–32 & n.4, 336, 337 n. 8; *Forest Oil Corp.,* 268 S.W.3d at 60; *Schlumberger Tech. Corp.,* 959 S.W.2d at 179. The Release does not contain clear and unequivocal language expressing Frankel's intent to disclaim reliance, as did the releases in *Schlumberger* and *Forest Oil*. *See Forest Oil Corp.,* 268 S.W.3d at 54, n.4; *Schlumberger Tech. Corp.,* 959 S.W.2d at 180. But, the Supreme Court of Texas has stated in judicial dicta that parties also may disclaim fraudulent-inducement claims through clear and unequivocal language that expresses the parties' intent to disclaim fraudulent-inducement claims, without any waiver-of-reliance language. *See Italian Cowboy Partners,* 341 S.W.3d 332 n.4; *Schlumberger Tech. Corp.,* 959 S.W.2d at 181.

The release in today's case is broader than a disclaimer of reliance because reliance is only one element of a fraudulent-inducement claim. *See Formosa Plastics Corp. USA*, 960 S.W.2d at 47–48. A clause that specifically waives any claim for fraudulent inducement is clearer than a waiver-of-reliance clause because while the purpose of a waiver-of-reliance clause is to head off a suit for fraud, such a clause does not say so expressly but instead uses the innocuous term "reliance," the significance of which may not be understood or appreciated by the disclaiming party. *See Allen,* 367 S.W.3d at 380 n. 23. The Release contains language clearly

8

and unequivocally expressing Frankel's intent to disclaim all claims that it was fraudulently induced to enter into the Settlement Agreement.

### *The other factors support enforcement of the Fraudulent-Inducement Release.*

As to the other factors, Frankel does not dispute that the terms of the Settlement Agreement were negotiated, Frankel was represented by its own counsel during these negotiations, and the parties were knowledgeable about business matters. There is nothing boilerplate about the Settlement Agreement; it clearly is unique to the parties' relationship and dispute. Nonetheless, Frankel maintains that during negotiations the parties did not specifically discuss the issue which has become the topic of the subsequent dispute and that the parties did not deal with each other at arm's length.

Frankel contends that, while negotiating the Settlement Agreement, the parties did not "discuss the issue that has become the topic of" the present dispute because that topic is the Probe transaction and it is precisely this information that GTP concealed from Frankel in order to induce the Settlement Agreement. However, the *Forest Oil* court did not state that, to satisfy this factor, the parties must have discussed the exact grounds that form the basis of the later dispute. *See Forest Oil Corp.,* 268 S.W.3d at 58, 60. Although Frankel was unaware of the Probe transaction when it executed the Settlement Agreement, an "issue" in both the earlier and present disputes is whether Frankel had an interest in various prospects. That the parties discussed an issue central to both the earlier and present disputes is compelling evidence that during negotiations of the Settlement Agreement the parties specifically discussed the issue which became the topic of the later dispute. *See id*.

The trial court concluded that the Fraudulent-Inducement Release was unenforceable as a matter of law because the parties were fiduciaries and thus did not "deal[] with each other in an arm's length transaction." The trial court concluded that such a provision is enforceable only if the parties first contractually disavow a fiduciary relationship.

The parties dispute whether they ever had a fiduciary relationship in the first place. But, even presuming for the sake of discussion that the parties were fiduciaries and still owed each other a fiduciary duty when they executed the Settlement Agreement, this relationship does not necessarily preclude enforcement of the Fraudulent-Inducement Release.[2] Parties owing each other a fiduciary duty may wish to finally end their disputes. Thus, their expressed intent to ensure finality by means of a fraudulent-inducement release or disclaimer of reliance, as well as their freedom to contract, should be accorded the same respect as the intent of other parties. *See id.*

As mentioned above, for a disclaimer to be enforced, the contract language must be "clear and unequivocal" in its expression of the parties' intent either to disclaim reliance or to disclaim fraudulent-inducement claims. *See Italian Cowboy Partners,* 341 S.W.3d at 331–32 & n.4, 336, 337 n. 8; *Forest Oil Corp.,* 268 S.W.3d at 60; *Schlumberger Tech. Corp.,* 959 S.W.2d at 179. Beyond this requirement, the other considerations regarding the circumstances surrounding contract formation are factors, rather than prerequisites, for enforceability of a disclaimer. *See Forest Oil*, 268 S.W.3d at 60; *Allen*, 367 S.W.3d at 384. The negotiation of a fraudulent-inducement disclaimer between fiduciaries might bear aspects of an arm's length transaction under certain circumstances. A disclaimer

---

[2] There is no need in this appeal to address whether GTP owed Frankel a fiduciary duty at any time.

of fraudulent-inducement claims between fiduciaries should not be deemed per se unenforceable simply because the fiduciaries owe each other a duty to disclose. Thus, if fiduciaries are to be allowed to ensure finality to their disputes under certain circumstances, the relevant inquiry should be whether the existence of a fiduciary relationship under these circumstances prevented Frankel from bindingly waiving its claim that GTP violated the duty to disclose and induced Frankel to enter into the Settlement Agreement.

Even presuming that the Settlement Agreement was not completely an arm's length transaction because the parties were still fiduciaries when they negotiated and executed the agreement, the relevant factors support enforceability of the Fraudulent-Inducement Release. The terms of the Settlement Agreement were freely negotiated and were not boilerplate. During negotiations these sophisticated parties, represented by their respective legal counsel, specifically discussed the issue that became the topic of the subsequent dispute. The parties were knowledgeable in business matters, and they structured the agreement in accordance with their considered objectives in allocating risks. These facts show that Frankel's ability to understand and meaningfully agree to the Fraudulent-Inducement Release was not inhibited due to the fiduciary relationship. Though Frankel was unaware during settlement negotiations of the information concealed or not disclosed by GTP, the parties discussed the subject about which GTP concealed or failed to disclose information—FGP, LLC prospects. In the Settlement Agreement the parties noted their dispute over whether Frankel had an interest in certain prospects. Frankel relinquished an interest in certain prospects, and the parties terminated their relationship.

In addition, the parties were adverse litigants when they executed the Settlement Agreement. This litigation context, considered in light of Frankel's business acumen and representation by counsel, indicates Frankel understood that GTP was protecting its own interests by negotiating the inclusion of the Fraudulent-Inducement Release and that Frankel needed to evaluate for itself whether the provision was in its best interest. In addition, GTP also released all of its claims against Frankel for fraud in the inducement of the Settlement Agreement. And, significantly, the Settlement Agreement terminated the parties' relationship. *See Italian Cowboy Partners,* 341 S.W.3d at 337 n.8; *Forest Oil Corp.,* 268 S.W.3d at 58.

The Settlement Agreement, the factors mentioned by the Supreme Court of Texas, and the totality of the surrounding circumstances all lead to the conclusion that this court should enforce the Fraudulent-Inducement Release, under which Frankel waives all of its claims for fraudulent inducement of the Settlement Agreement, including claims based upon a misrepresentation allegedly contained in the Settlement Agreement.

***An Agreement to waive fraudulent-inducement claims based upon alleged representations in the same contract should be enforceable under the same standards as waivers of extra-contractual fraud.***

The parties have not cited, and research has not revealed, any Texas authority addressing whether a fraudulent-inducement release or disclaimer of reliance is enforceable if the alleged fraud is based upon an alleged misrepresentation in the contract itself. Frankel asserts that the Fraudulent-

Inducement Release cannot be used to disclaim a fraudulent-inducement claim based upon an alleged misrepresentation contained in the Settlement Agreement.[3]

Whether Texas courts should enforce the parties' agreement to disclaim fraudulent-inducement claims based upon an alleged misrepresentation contained in the Settlement Agreement raises the issue of what balance should be struck between Texas's public policy against fraud and Texas's fundamental public policy in favor of a broad freedom of contract. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 95 (Tex. 2011) (stating that "[a]s a fundamental matter, Texas law recognizes and protects a broad freedom of contract"); *Schlumberger Tech. Corp.,* 959 S.W.2d at 178–80; *Abry Partners, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1035–36 (Del. Ch. 2006). In *Schlumberger*, the jury found that the defendant had actual awareness of the falsity of its misrepresentation that allegedly induced the plaintiffs to execute a release, and our high court presumed that the defendant induced the plaintiffs to execute the release by a misrepresentation that it knew was false. *See Schlumberger Tech. Corp.,* 959 S.W.2d at 175, 178. Nonetheless, the high court held that the waiver-of-reliance provision negated fraudulent inducement as a matter of law, even if the defendant knew that its representation was false. *See id*. at 178–82. This precedent shows that Texas balances the public policy interests more in favor of freedom of contract. *See id*.

Frankel cites Delaware law and suggests Texas should follow Delaware on this issue. *See Abry Partners, L.P.*, 891 A.2d at 1035–36, 1055–64 (concluding that Delaware law does not allow even sophisticated contracting parties,

---

[3] Frankel argues that the Fraudulent-Inducement Release cannot be read to disclaim fraudulent inducement based upon a misrepresentation embodied in the Settlement Agreement and that the jury's fraudulent-inducement finding could have been based upon such a misrepresentation. Frankel thus asserts that, due to GTP's failure to challenge the legal sufficiency of the jury's fraudulent-inducement finding, the Fraudulent-Inducement Release cannot provide a basis for disregarding that jury finding, even if the Fraudulent-Inducement Release may be enforced to bar fraudulent-inducement claims based upon extra-contractual fraud.

represented by counsel, to limit or eliminate another contracting party's fraudulent-inducement claim based upon an alleged misrepresentation contained in the contract itself).  But, Delaware has its own public policy, one that emphasizes freedom of contract less.  *See id.*  Under Delaware law, sophisticated contracting parties who negotiate the terms of their contract at arm's length while represented by counsel lack the freedom to agree to limit the remedy, cap the damages, or disclaim altogether a fraudulent-inducement claim, if the claim is based upon a purported misrepresentation allegedly made with knowledge of its falsity.  *See Overdrive, Inc. v. Baker & Taylor, Inc.*, No. 5835-CC, 2011 WL 2448209, at \*6 (Del. Ch. Jun. 17, 2011); *Abry Partners, L.P.*, 891 A.2d at 1055–64.  But, under Texas law, such parties generally have the freedom to waive reliance or fraudulent-inducement claims based upon a purported misrepresentation allegedly made with knowledge of its falsity.  *See Schlumberger Tech. Corp.,* 959 S.W.2d at 175, 178–82.  Thus, our state's public policy gives greater freedom of contract to sophisticated businesses to bargain for provisions waiving fraudulent-inducement claims.  *See id.*; *Overdrive, Inc.*, 2011 WL 2448209, at \*6; *Abry Partners, L.P.*, 891 A.2d at 1055–64.  Thus, Frankel's reliance on Delaware law is less persuasive in light of Delaware's differing public policy.

Frankel also cites a case decided by the Delaware Chancery Court applying New York law.  *See Xu v. Heckmann Corp.*, No. 4637-CC, 2009 WL 3440004, at \*11 (Del. Ch. Oct. 26, 2009).  In that case, the court stated in a conclusory manner that a waiver-of-reliance provision cannot bar fraudulent-inducement claims based upon an alleged misrepresentation contained in the contract.  *See id.*  The *Xu* court did not address today's scenario in which the contractual language expressly waives fraudulent-inducement claims.  *See id.* Nor did the *Xu* court cite legal

authority for this proposition or analyze the public policy interests involved.  *See id.*

In deciding this issue under Texas law, courts should honor Texas's strong public policy in favor of broad freedom of contract; courts should respect the considered choice of sophisticated players in the marketplace to bargain for provisions waiving fraudulent-inducement claims, to put a price on such provisions, and to make their own choices about the risks they should bear.  The Texas Legislature has not prohibited enforcement of  agreements in which parties disclaim fraudulent-inducement claims based upon an alleged misrepresentation contained in the contract, and Texas courts should not prohibit enforcement of all such agreements under the common law; rather, Texas courts should enforce such disclaimers if they pass muster under the general analysis for such disclaimers, as discussed above.  Doing so promotes freedom-of-contract values.

## *Conclusion*

Texas courts should not impose a general ban on the enforcement of releases of fraudulent-inducement claims that are based upon an alleged misrepresentation contained in the same contract.  Sophisticated parties should be free to define their rights and to allocate risks of their business transactions.  By enforcing clear and unequivocal disclaimers of fraudulent-inducement claims, including those based upon alleged misrepresentations contained in the contract, Texas courts not only honor important freedom-of-contract principles but also enhance the certainty and predictability that is so vital to contractual relationships.

Under the unambiguous language of the Fraudulent-Inducement Release, Frankel unequivocally waived all claims for fraud in the inducement of the Settlement Agreement, regardless of whether the alleged fraud was expressed in

the contract.[4] Because this release is enforceable under the *Schlumberger*, *Forest Oil*, *Italian Cowboy* trilogy of cases, the trial court erred in refusing to enforce it and in granting rescission of the Settlement Agreement, which contained a release of Frankel's breach-of-fiduciary-duty claim. Accordingly, I concur in the court's judgment, but I respectfully decline to join the majority opinion.


/s/    Kem Thompson Frost
       Justice

Panel consists of Justices Frost, Seymore, and Boyce. (Seymore, J., majority)

---

[4] Therefore, it is not necessary for this court to address the legal sufficiency of the evidence supporting a finding of fraudulent-inducement based upon a purported misrepresentation allegedly contained in the Settlement Agreement.

16