Concurring opinion issued April 5, 2013



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-09-00728-CV

————————————

**PETER FAZIO, SHARI FAZIO, AND ERIC FAZIO, Appellants**

**V.**

**CYPRESS/GR HOUSTON I, L.P.; CYPRESS/GR HOUSTON, INC.; AND CYPRESS EQUITIES, INC., Appellees**

**and**

**CYPRESS/GR HOUSTON I, L.P.; CYPRESS/GR HOUSTON, INC.; AND CYPRESS EQUITIES, INC., Appellants**

**V.**

**PETER FAZIO, Appellee**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2004-65110**

---

# CONCURRING OPINION

I join the en banc majority opinion. Because the disclaimer of reliance and merger principles at issue in this case have broad application in commercial contracts, I write separately to address the dissenters' erroneous analysis of the parties' disclaimer of reliance.[1] Although it was not necessary for the en banc majority to decide this issue to affirm the trial court's take-nothing judgment[2]— and the en banc majority did not decide the issue—it continues to be my opinion that it is an independent basis to affirm.[3]

This appeal arises from a $7.67 million real-estate transaction between experienced and sophisticated investors. The fully integrated written agreement for the purchase and sale of commercial property recited that the buyer would "rely

---

[1]   All of my quotations from and other references to the "dissent" are references to the principal dissenting opinion authored by Justice Keyes.

[2]   *See Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991) ("When the trial court states no reason why judgment n.o.v. was granted, and the motion for judgment n.o.v. presents multiple grounds upon which judgment n.o.v. should be granted, the appellant has the burden of showing that the judgment cannot be sustained on any of the grounds stated in the motion."). Contrary to the dissent's implied assertion, *see* Dissent at 9, the trial court did not explicitly rule on the disclaimer-of-reliance issue. The trial court's December 22, 2008 order granting JNOV did not specify any particular substantive ground for the ruling.

[3]   *See Fazio v. Cypress/GR Houston I, L.P.*, No. 01-09-00728-CV, 2012 WL 3524842, at *30–*38 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012) (Massengale, J., dissenting).

solely upon its own investigation with respect to the Property, including, without limitation, the Property's . . . economic condition." The agreement also clearly and unequivocally expressed an intention to disclaim the buyer's reliance on the seller's representations—and omissions from representations—with respect to the economic condition of the property, and it disclaimed any seller liability to the purchaser with respect to such representations or omissions. The question is whether these contractual provisions should be enforced.

The dissenters would refuse to enforce this contract as written. I disagree, and would hold that the parties' disclaimer of reliance foreclosed any subsequent claim that the buyer was fraudulently induced to enter into the transaction.

## I.    Effect of fully integrated purchase agreement

The parties' duties with respect to pre-transaction due diligence were expressly defined in the Purchase Agreement, which was a fully integrated contract. The notion that the seller[4] breached duties of disclosure arising from

---

[4]    The "seller" identified in the LOI was Cypress Equities, and the "seller" identified in the Purchase Agreement was Cypress GR/Houston I, L.P. Although the jury found that these entities operated as a single business enterprise, the trial court granted the defendants' motion for JNOV and disregarded that finding. The dissenters' analysis would require that the jury finding concerning existence of a single business enterprise be reinstated, and their opinion treats all Cypress entities as if they were the same party. In the interest of simplicity, for purposes of my opinion I refer generally to the "seller" except to the extent specific points depend upon identification of the particular entity.

3

provisions in the preliminary letter of intent is a flawed premise, because the LOI's terms were inconsistent with the final agreement. The due diligence terms of the LOI, including the provision that "[t]he Seller will provide Buyer with all information in their possession," did not become binding obligations of the seller upon the execution of the Purchase Agreement.

Instead, as the parties expressly contemplated at the time the LOI was executed, and as routinely occurs in such transactions,[5] the terms of the LOI were

My analysis of the contracts at issue makes it unnecessary for me to also address the alter-ego issue to conclude that that the trial court's judgment should be affirmed. I nevertheless note my disagreement with the dissenters' conclusory analysis of that issue. *See* Dissent at 46–48. The dissenters note that various actions were taken by separate related entities, but they identify none of the kind of evidence relating to the relationship of the corporate entities necessary to justify piercing the corporate veil, nor does it analyze whether the entities' use of limited liability was illegitimate. *See SSP Partners v. Gladstrong Inves. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2009). Texas law presumes that separate corporations are distinct entities. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002). Contrary to the entire thrust of the dissenters' discussion of this issue, an entity or person does not become jointly liable for a corporation's obligations "merely because they were part of a single business enterprise" or "merely because of centralized control, mutual purposes, and shared finances." *SSP Partners*, 275 S.W.3d at 452, 455.

[5] *See, e.g.*, *Tellepsen Builders, L.P. v. Kendall/Heaton Assocs., Inc.*, 325 S.W.3d 692, 699 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (cited with approval in *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 334 n.6 (Tex. 2011)); *John Wood Group USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 19 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) ("the

displaced by and replaced with the terms of the Purchase Agreement. That is the typical resulting effect on a preliminary letter of intent after the parties execute a subsequent, fully integrated contract. By executing the LOI, the parties acknowledged that the document was "an expression of understanding and intention only, and if accepted, will provide guidance for drafting a formal Purchase Agreement." The LOI specified that "Terms and conditions set forth in this proposal shall not be binding on both parties until and unless a formal Purchase Agreement is executed and delivered to both parties."

This language did not bind the parties to strict compliance with all provisions of the LOI before they could execute their negotiated Purchase Agreement. The entire thrust of the LOI is to the contrary, emphasizing the contingent, nonbinding nature of the parties' preliminary negotiating positions. The LOI was prepared in the form of a letter from Fazio, as buyer, to Cypress Equities, as seller. Each of the italicized terms in the following excerpts from the LOI confirms the parties' intention that the LOI was a preliminary and fundamentally nonbinding expression of the conditions under which they would continue to negotiate towards the possible result of a purchase and sale:

---

basic concept of a letter of intent is to provide the parties with a way to structure their agreement without entering a binding contract").

- Fazio wrote in the LOI that the letter "will confirm my interest in *negotiating with you* for the sale of your Property, referenced above, under the following terms and conditions." The reference to negotiations suggests an ongoing discussion about whether the parties will consummate a transaction.

- The LOI provided for no earnest money to be paid immediately by Fazio as buyer, but instead that an escrow deposit of $50,000 would be made only upon "*the execution of a formal Purchase Agreement.*" The escrow deposit would be increased to $100,000 and "*become non-refundable . . . upon the Buyer's written removal of all contingencies agreed to in the Purchase Agreement.*" This language confirms the preliminary status of the negotiations because an initial escrow deposit would not be required unless the parties advanced to the stage of executing a formal agreement, and the parties contemplated that even that agreement might be nonbinding in certain respects, as contingencies might remain such that the escrow might still be refundable to the buyer.

- With respect to anticipated due diligence, Fazio's letter proposed that he would have "30 days from the receipt of the . . . documents to investigate all aspects of the Property *to determine, in Buyer [sic] sole judgement, if it is acceptable.*" This term confirms that Fazio was not committed to buying the property, as he retained the right to exercise his "sole judgement" whether to proceed with the purchase.

- Finally, the LOI provided: "This *proposal* is an *expression of understanding and intention only*, and *if accepted*, will provide *guidance* for drafting a formal Purchase Agreement. Terms and conditions set forth in this proposal *shall not be binding* on both parties until and unless a formal Purchase Agreement is executed and delivered to both parties." This language confirms the preliminary and nonbinding nature of everything contained in the LOI. It expressly contemplated that a later, more formal agreement would be negotiated if the parties chose to proceed. It also contemplated that the ultimate terms of the Purchase Agreement would vary from the terms of the LOI, which would only provide "guidance" at that stage of the negotiation. Read in context of the entire LOI, the reference to its terms being nonbinding "until and unless a formal Purchase Agreement is executed" cannot be read reasonably to indicate that the

parties could not continue to negotiate terms or that, upon doing so, the parties could not document their final understanding and binding agreement by including a merger clause that confirmed that the final agreement superseded all prior oral and written agreements.

To recapitulate, the LOI referenced anticipated continuing negotiations, the contingent nature of the parties' "expression of understanding and intention," and the buyer's continuing freedom to decide whether the property is acceptable. All terms were expressly declared to be nonbinding, and there was no indication that any specific term was intended to survive the negotiations and ultimate execution of the Purchase Agreement.

Consistent with expectations as articulated in the LOI, that nonbinding agreement was mooted when Fazio and Cypress GR/Houston I, L.P. entered into an integrated agreement containing the following merger clause:

Section 11.1        Entire Agreement.

This Agreement contains the entire agreement of the parties hereto. There are no other agreements, oral or written, and this Agreement can be amended only by written agreement signed by the parties hereto, and by reference, made a part hereof.

This provision declared the intention that the Purchase Agreement constituted "the entire agreement of the parties," indicating that the contract was a completely integrated agreement and not one of multiple agreements addressing multiple

aspects of a transaction or the relationship between the parties.[6] One effect of a merger clause in this circumstance is to invoke the substantive doctrine of the parol evidence rule, such that all prior negotiations and agreements with regard to the same subject matter are excluded from consideration, whether they were oral or written. *See, e.g.*, *Edascio, L.L.C. v. NextiraOne L.L.C.*, 264 S.W.3d 786, 796 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Ledig v. Duke Energy Corp.*, 193 S.W.3d 167, 178 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Baroid Equip., Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 215 (1981). "The rule is particularly applicable when the written contract contains a recital that it contains the entire agreement between the parties or a similarly-worded merger provision." *Baroid Equip.*, 184 S.W.3d at 13. Thus, even to the extent that—in an appropriate case—the LOI might be considered as evidence in order to establish an allegation of fraud, it cannot be used as a bootstrap merely to

---

[6] Notably, to the extent that Fazio actually contracted with different entities when executing the LOI and the Purchase Agreement (and not the same entity in both instances), by its own terms the Purchase Agreement's merger clause would not integrate and supersede Fazio's agreement with Cypress Equities, which was not a party to the Purchase Agreement. Nevertheless, that nuance provides no relief to Fazio. Assuming that he dealt with different entities when entering into the two agreements, then he cannot rely on the LOI with Cypress Equities to impose a contractual duty to disclose on Cypress GR/Houston I, L.P.

establish the existence of a separate and inconsistent contractual duty. "[T]he mere failure to perform a contract is not evidence of fraud." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). Accordingly, the seller's contractual disclosure obligations in this case were not contained in the LOI, but instead were exclusively contained in the Purchase Agreement itself.

When the parties did execute a formal and fully integrated Purchase Agreement, they did not adopt the due diligence provisions of the LOI, but instead agreed to a much more detailed "Inspection" provision, contained in Article V of the Agreement. Thus the parties' only agreement as it pertains to the seller's disclosure obligations is contained in the Purchase Agreement, and not in the LOI.

## II. Enforceability of waiver of liability and disclaimer of reliance

Divorcing the terms of the LOI from the analysis and focusing solely upon the terms of the Purchase Agreement, that contract waives any liability for omissions from the seller's communications to the buyer, and it includes a clear and unequivocal expression of intent to disclaim the buyer's reliance on the completeness of the documentation provided to it by the seller. Article V of the Purchase Agreement contains the parties' agreement about the parameters of the buyer's opportunity to perform due diligence. Section 5.1 is entitled "Inspection Period," and it provides for a 30-day period, commencing on the "Effective Date,"

9

during which time the buyer was afforded reasonable opportunities to enter and inspect the property.  During the first 10 days of the Inspection Period, the seller was required to deliver a group of "Documents" to the purchaser, as defined in section 5.2, which is devoted to describing and limiting the seller's disclosure obligations.

To understand the flaw in the dissenters' interpretation of section 5.2, it is helpful to set out that provision in its entirety before examining the critical component parts:

Section 5.2  Document Review.

(a) Documents.  Within ten (10) days after the Effective Date, Seller shall deliver to Purchaser the following, if in the possession of Seller (collectively, the "**Documents**"):

(i)    copies of the Lease and all amendments thereto;

(ii)   the Survey;

(iii)  copies of any Plans;

(iv)   to the extent allowed by the author, copies of all existing soil, engineering, architectural, and environmental reports covering the Property in Seller's possession;

(v)    copies of all Service Contracts, if any; and

(vi)   copies of all Permits.

(b) Proprietary Information.  Purchaser acknowledges that any and all of the Documents are proprietary and confidential in nature and will be delivered to Purchaser

10

solely to assist Purchaser in determining the feasibility of purchasing the Property. Purchaser agrees not to disclose the contents of the Documents to any party outside of Purchaser's organization except to its attorneys, accountants, lenders, or investors (collectively, the "**Permitted Outside Parties**"). Purchaser further agrees that the Documents shall be disclosed and exhibited only to those persons within Purchaser's organization or to those Permitted Outside Parties who are responsible for determining the feasibility of Purchaser's acquisition of the Property and who have agreed in writing to preserve the confidentiality of such information as required herein. In permitting the Permitted Outside Parties to review the Documents or other information to assist Purchaser, Seller has not waived any privilege or claim of confidentiality with respect thereto, and no third party benefits or relationships of any kind, either express or implied, have been offered, intended or created by Seller and any such claims are expressly rejected by Seller and waived by Purchaser and the Permitted Outside Parties, for whom, by its execution of this Agreement, Purchaser is acting as an agent with regard to such waiver.

(c) Return of Documents. Purchaser shall return all of the Documents, any and all copies Purchaser has made of the Documents, and all copies of any studies, reports, or test results obtained by Purchaser in connection with its inspection of the Property (collectively, the "**Purchaser's Information**") within five (5) business days following such time as this Agreement is terminated for any reason. This provision shall survive the termination of this Agreement.

(d) No Representation or Warranty by Seller. Purchaser hereby acknowledges that, except as otherwise specifically set forth in this Agreement, Seller has not made and does not make any warranty or representation regarding the truth, accuracy, or completeness of the Documents or the source(s) thereof, and that Seller has not undertaken any independent investigation as to the

11

truth, accuracy, or completeness of the Documents and is providing the Documents solely as an accommodation to Purchaser. Except with respect to any express warranties made in this Agreement, Seller expressly disclaims and, Purchaser waives any and all liability for representations or warranties, express or implied, statements of fact, and other matters contained in the Documents, or for any omissions from the Documents, or in any other written or oral communications transmitted or made available to Purchaser. Except with respect to any express warranties made in this Agreement, Purchaser shall rely solely upon its own investigation with respect to the Property, including, without limitation, the Property's physical, environmental, or economic condition, compliance or lack of compliance with any ordinance, order, permit, or regulation or any other attribute or matter relating thereto.

The "Documents" to be disclosed pursuant to section 5.2(a) were "copies of the Lease and all amendments thereto," "the Survey," "copies of any Plans," "to the extent allowed by the author, copies of all existing soil, engineering, architectural, and environmental reports covering the Property in Seller's possession," "copies of all Service Contracts, if any," and "copies of all Permits."[7] Section 5.2(b) and (c) included provisions for the treatment of proprietary

---

[7] The inclusion of the lease and all service contracts as part of the "Documents" demonstrates that the category was not limited to items "which dealt with the condition of the Property," nor do the "Documents" entirely exclude items relating to "the economics of the purchase transaction."

information within the "Documents" and for the return of all "Documents" in the event the Purchase Agreement was terminated.

## A. Disclaimer and waiver of liability for omissions

Importantly, section 5.2(d) is entitled "No Representation or Warranty by Seller." In it, the buyer acknowledged:

> . . . [E]xcept as otherwise specifically set forth in this Agreement, Seller has not made and does not make any warranty or representation regarding the truth, accuracy, or completeness of, the Documents or the source(s) thereof, and that Seller has not undertaken any independent investigation as to the truth, accuracy, or completeness of the Documents and is providing the Documents solely as an accommodation to Purchaser. . . .

The foregoing language did not affirmatively authorize the seller to misrepresent the truth or to knowingly conceal information, but it could reflect the parties' intention to limit the scope of the seller's obligations to search for and investigate the "Documents" to be provided by the seller. More critically, the following sentence provided:

> . . . Except with respect to any express warranties made in this Agreement, Seller expressly disclaims and Purchaser waives any and all liability for representations or warranties, express or implied, statements of fact, and other matters contained in the Documents, or for any omissions from the Documents, or in any other written or oral communications transmitted or made available to Purchaser. . . .

13

This sentence expressly addressed the seller's "liability" in connection with providing the "Documents." It clearly and unequivocally provided that the seller "expressly disclaims"—and that the buyer "waives"—"any and all liability" for effectively everything "contained in the Documents."[8] And beyond the information affirmatively provided by disclosing the "Documents," the express disclaimer and waiver of liability also extended to "any omissions" from information that was provided, regardless of whether it should have been disclosed as part of the "Documents." That same seller's disclaimer of liability and buyer's waiver of liability extended to "any omissions . . . in any other written or oral communications transmitted or made available to Purchaser."

Plain English and its rules of grammar confirm that this disclaimer and waiver of liability extended to omissions from the seller's communications to the buyer.[9] The phrase "in any other written or oral communications transmitted or

---

[8]    As phrased in the Purchase Agreement, the matters "contained in the Documents" for which the "Seller expressly disclaims and the buyer waives any and all liability" are described as: (a) "representations or warranties, express or implied," (b) "statements of fact," and (c) "other matters contained" therein.

[9]    *See, e.g.*, *Gen. Fin. Servs., Inc. v. Practice Place, Inc.*, 897 S.W.2d 516, 522 (Tex. App.—Fort Worth 1995, no writ) ("Courts are required to follow elemental rules of grammar for a reasonable application of the legal rules of construction."); *Porter v. Milner*, 352 S.W.2d 787, 789 (Tex. Civ. App.— Fort Worth 1961, no writ) ("Rules of grammar underlie all legal rules applicable in the construction of contracts.").

14

made available to Purchaser" properly can be read only as a modification of "omissions." The only other conceivable function of that phrase in the sentence would be to modify the reference to "liability," but that reading would require the implausible assumption that the contract was drafted to disclaim and waive "liability . . . *in* any other written or oral communications transmitted or made available to Purchaser." (Emphasis supplied.) One does not ordinarily speak of liability "in" a matter, but of liability "for" something. The natural and correct reading of the contract language is that liability is disclaimed and waived "*for* any omissions . . . *in* any other written or oral communications transmitted or made available to Purchaser." (Emphasis supplied.) Section 5.2(d)'s reference to "omissions" thus cannot be read, as the dissenters read it, *see* Dissent at 24–25, as if it were limited to "omissions from the Documents" and did not also embrace "omissions . . . in any other written or oral communications transmitted or made available to Purchaser."

Tellingly, the dissenters have failed to respond to the merits of this grammatical analysis, nor have they offered any other interpretation of the disclaimer as it relates to "omissions . . . in any other written or oral communications transmitted or made available to Purchaser."

15

**B. Buyer's sole reliance on his own investigation and purchase of property "as is"**

Consistent with the aforementioned provisions immunizing the seller from liability for errors or omissions in communications to the buyer, section 5.2(d) concluded by affirming that the buyer was accepting responsibility for developing the information necessary to satisfy itself about the property it was buying:

> Except with respect to any express warranties made in this Agreement, Purchaser shall rely solely upon its own investigation with respect to the Property, including, without limitation, the Property's physical, environmental, or economic condition, compliance or lack of compliance with any ordinance, order, permit, or regulation or any other attribute or matter relating thereto.

The buyer's specific affirmation that it was relying solely upon its own investigation, and the parties' deliberate intent to foreclose liability for both the seller's affirmative communications to the buyer and omissions therefrom, are further confirmed by the Purchase Agreement's inclusion of an "as-is" provision in section 5.5, which provided, in relevant part:

> Property Conveyed "AS IS".
>
> (a)    EXCEPT AS OTHERWISE PROVIDED HEREIN OR IN THE DEED . . . (2) PURCHASER HEREBY EXPRESSLY ACKNOWLEDGES AND AGREES THAT (A) PURCHASER HAS OR WILL HAVE, PRIOR TO THE END OF THE INSPECTION PERIOD, THOROUGHLY INSPECTED AND EXAMINED THE PROPERTY TO THE EXTENT DEEMED

16

NECESSARY BY PURCHASER IN ORDER TO ENABLE PURCHASER TO EVALUATE THE PURCHASE OF THE PROPERTY AND (B) PURCHASER IS RELYING SOLELY UPON SUCH INSPECTIONS, EXAMINATIONS, AND EVALUATION OF THE PROPERTY BY PURCHASER IN PURCHASING THE PROPERTY ON AN "AS IS", "WHERE IS" AND "WITH ALL FAULTS" BASIS, WITHOUT REPRESENTATIONS, WARRANTIES OR COVENANTS, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE.

. . . .

Fazio's willingness to execute the Purchase Agreement, with its disclaimers, cannot be explained by his supposed expectation that the seller had provided "every scrap of paper" in its possession relating to the property. Dissent at 17. Such an expectation would not be reasonable under the terms of the fully integrated Purchase Agreement. A far more plausible inference would be that if a buyer were in fact relying upon a belief that the seller had disclosed "every scrap of paper" to him, such a buyer would not have agreed to a provision stating that it "shall rely solely upon its own investigation with respect to the Property, including, without limitation, the Property's . . . economic condition." A sophisticated real-estate purchaser could be expected to memorialize such an understanding in section 8.2 of the Purchase Agreement, which contained "Seller's Representations and Warranties." Fazio didn't.

**C. Application of *Schlumberger*, *Forest Oil*, and *Italian Cowboy***

Contrary to the dissenters' view, the Texas Supreme Court's recent *Italian Cowboy* opinion did not address circumstances "similar" to those in this case. Dissent at 14. The language relied upon in *Italian Cowboy* as a purported disclaimer of reliance provided: "Tenant acknowledges that neither Landlord nor Landlord's agents, employees, or contractors have made any representations or promises with respect to the Site, the Shopping Center or this Lease except as expressly set forth herein." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 328 (Tex. 2011). The Court compared this language to the provisions found to be effective disclaimers of reliance in *Schlumberger*[10] and

---

[10]  The *Italian Cowboy* opinion quoted and relied upon the following language from the settlement agreement at issue in *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997):

> [E]ach of us . . . expressly warrants and represents . . . that no promise or agreement which is not herein expressed has been made to him or her in executing this release, and that none of us is *relying* upon any statement or representation of any agent of the parties being released hereby. Each of us is *relying* on his or her own judgment . . . .

*Italian Cowboy*, 341 S.W.3d at 336 (quoting *Schlumberger*, 959 S.W.2d at 180 (emphasis added in *Italian Cowboy*)).

*Forest Oil*,[11] and concluded that the lease language at issue in the case did not include clear and unequivocal language expressly disclaiming reliance on representations and affirming reliance on one's own judgment. *See id*. at 336. Instead, the *Italian Cowboy* Court found the language at issue to indicate "nothing more than the provisions of a standard merger clause," which is not sufficient to indicate an intent to disclaim reliance. *Id*. at 334. In other words, it is a misunderstanding of *Italian Cowboy* to suggest that the Supreme Court allowed a claim of fraudulent inducement to proceed despite a disclaimer of reliance. *See* Dissent at 15–16. The critical distinguishing factor in *Italian Cowboy* was the absence of a disclaimer of reliance.

This case is distinguishable from *Italian Cowboy* in at least two respects. The Purchase Agreement uses the term "rely" in providing that the "Purchaser

---

[11]    The opinion quoted and relied upon the following language from the settlement agreement at issue in *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51 (Tex. 2008):

> [We] expressly represent and warrant . . . that no promise or agreement which is not herein expressed has been made to them in executing the releases contained in this Agreement, and that they are not *relying* upon any statement or representation of any of the parties being released hereby. [We] are *relying* upon [our] own judgment . . . .

*Italian Cowboy*, 341 S.W.3d at 336 (quoting *Forest Oil*, 268 S.W.3d at 54 (emphasis added in *Italian Cowboy*)).

shall *rely* solely upon its own investigation with respect to the Property."

(Emphasis supplied.) "Rely" is also used in the "as-is" clause, in which the buyer affirmed it was "RELYING SOLELY UPON SUCH INSPECTIONS, EXAMINATIONS, AND EVALUATION OF THE PROPERTY" as it deemed necessary to enable its evaluation of the transaction.[12] This factor was expressly noted in *Italian Cowboy* to distinguish that case from *Schlumberger* and *Forest Oil*, both of which featured contracts using the term "rely" to clearly and unequivocally indicate a party's intent to rely on its own judgment. *See Italian Cowboy*, 341 S.W.3d at 336. Second, the key language at issue cannot be characterized as merely echoing the intent and purpose of a merger clause. Rather, the language specifically references "liability" arising from representations or omissions from documents or other written or oral communications, and it clearly

---

[12] The presence of the "as-is" clause also precludes the buyer from asserting that he was fraudulently induced to enter into the transaction by the seller's breach of a common-law duty to disclose information about the property. This clause affirmed the buyer's opportunity to fully inspect to the extent he deemed necessary, as well his sole reliance upon his own inspections. Such affirmations and agreements between sophisticated parties of relatively equal bargaining position should be given effect. *See Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995).

and unequivocally provides that the seller disclaims and that the buyer waives "any and all" liability of that nature.[13]

The buyer-plaintiffs' claims in this case arise from their allegation that the seller-defendants failed to disclose information about economic risks to the property owner, i.e., the financial condition of the property's tenant and the tenant's requests for rent relief, facts which affected the value of the income stream expected from renting the property to that tenant. The dissenters studiously ignore the Purchase Agreement's specific reference to the Property's "economic condition" as one of the aspects of the transaction for which the buyer was relying "solely upon its own investigation." I would hold that the Purchase Agreement's express disclaimer and waiver of seller liability arising from representations or omissions in the parties' communications leading up to the closing of the transaction, combined with the acknowledgement that "Purchaser shall rely solely upon its own investigation with respect to the Property, including, without

---

[13] The seller's "one-sided knowledge of past facts" as referenced in *Italian Cowboy* and by the dissenters, *see* Dissent at 14, had nothing to do with why that case was distinguishable from *Schlumberger* and *Forest Oil*. *Italian Cowboy* thus does not support a conclusion in this case that "Cypress's superior knowledge of past facts . . . made Cypress's suppression of information . . . actionable under the circumstances." Dissent at 17–18. That conclusion can only be reached by disregarding the legal effect of a disclaimer of reliance by a sophisticated purchaser in a commercial real estate transaction.

21

limitation, the Property's . . . economic condition," constitutes clear, specific, and unequivocal disclaimer of reliance sufficient to preclude this subsequent claim of fraudulent inducement. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997).

## D. Enforceability of disclaimer

The question remains, however, whether the disclaimer is binding in light of the totality of circumstances surrounding this contract. *See Forest Oil*, 268 S.W.3d at 61; *Schlumberger*, 959 S.W.2d at 179. This is a legal question which we review de novo. *Forest Oil*, 268 S.W.3d at 55. The factors that guided the Supreme Court's reasoning in *Schlumberger* and *Forest Oil* included:

> (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other in an arm's length transaction; (4) the parties were knowledgeable in business matters; and (5) the release language was clear.

*Id*. at 60. The Fazios do not dispute that this was an arm's-length transaction. As explained above, the language disclaiming reliance and waiving liability based upon seller representations was clear.

The other aspects of this transaction also support enforcing the agreement as written. Fazio is an experienced and sophisticated real estate investor. This was a $7,667,000 commercial transaction. The agreement was not presented to Fazio as

22

non-negotiable boilerplate—in fact, he requested changes, including a change to delete any reference to him having the agreement reviewed by legal counsel. He similarly could have requested deletion of all or part of section 5.2(d) and 5.5.[14] Moreover, Fazio's request to remove a reference to his use of counsel demonstrated not only that he had the opportunity to review and negotiate the language of the contract, but also that his choice to forego the assistance of counsel was deliberate. It is undisputed that Fazio had ample resources to consult counsel. He routinely employed the professional assistance of real estate brokers, but he chose not to employ the professional assistance of legal counsel. Under such circumstances, he assumed the risk of proceeding without counsel, and his choice in that regard should not excuse him from being bound to the terms of his contract.

Unlike *Schlumberger* and *Forest Oil*, both of which involved settlement agreements, a final resolution of all disputes among the parties is not a factor informing the overall circumstances of this real estate transaction. And the record does not reflect specific negotiations about the provision at issue. Nevertheless, I would hold that, on balance, these factors are outweighed by the clear language of

---

[14] *See Prudential Ins.*, 896 S.W.2d at 161 (noting that instead of agreeing to buy property "as is," a buyer "could insist instead that the seller assume part or all of that risk by obtaining warranties to the desired effect," and further noting that "[i]f the seller is willing to give such assurances, however, he will ordinarily insist upon additional compensation").

the contract, the arm's-length nature of the transaction, the experience and sophistication of the parties, the magnitude of the transaction, and the complaining party's deliberate choice to forego the assistance of legal counsel despite manifest opportunity and ability to have the assistance of an attorney.

Accordingly, as a separate and independent ground for affirming the trial court's rendition of judgment notwithstanding the verdict, I would hold that the buyers disclaimed reliance on the completeness of seller's disclosures and affirmatively waived any subsequent claim of fraudulent inducement to enter into the transaction.

Michael Massengale
Justice

Justice Bland, joined by Chief Justice Radack, and by Justices Massengale, Brown, and Huddle, for the en banc court.

Justice Massengale, concurring.

Justice Keyes, joined by Justices Jennings, Higley, and Sharp, dissenting.

Justice Jennings, joined by Justices Keyes, Higley, and Sharp, dissenting from granting of en banc reconsideration.